**ALLSTATE INDEMNITY COMPANY,**
**an Illinois corporation, Plaintiff,**

v.

**Vena STUMP, as Personal Representative of the Estate of Harold Stump, and Vernon the Boy as personal representative of the Estate of Victor the Boy; Arthur Windy Boy, Associate Judge, Chippewa Cree Tribal Court, in his official capacity only, Defendants.**

**No. CV 97–82–GF–DWM.**

United States District Court,
D. Montana,
Great Falls Division.

Sept. 3, 1997.

Brian Lilletvedt, Bosch, Kuhr, Dugdale, Martin & Kaze, Havre, MT, Mikel L. Moore, Christensen, Moore & Cockrell, PC, Kalispell, MT, for Allstate Ins. Co.

Gary M. Zadick, Ugrin, Alexander, Zadick & Higgins, PC, Great Falls, MT, Patrick F. Flaherty, Flaherty Law Office, Great Falls, MT, for Vina Stump, Vernon The Boy and Arthur Windy Boy.

Daniel X. Daniel D. Belcourt, Tichy Law Offices, Veradale, WA, for Chippewa Cree Tribal Court.

## ORDER

MOLLOY, District Judge.

### BACKGROUND

Plaintiff Allstate Indemnity Company (Allstate) seeks to enjoin the Chippewa Cree Tribal Court from exercising jurisdiction in a bad-faith insurance claim brought against it in tribal court by defendants in this case. Trial in tribal court is set for September 24, 1997. Allstate wants this court to issue a preliminary injunction staying the trial, and a permanent injunction preventing the tribal court from exercising further jurisdiction over the claim. Defendants (tribal court plaintiffs) filed a motion to dismiss in opposition to the request for injunctive relief. The request for a temporary restraining order was denied after oral argument.

Allstate is an Illinois corporation authorized to do business in the State of Montana. In 1996, Defendants filed an action in the Chippewa Cree Tribal Court for the Rocky Boy Indian Reservation against Allstate Indemnity Company and Dennis Sangray, an Allstate insured.

The complaint arose out of a motor vehicle accident which occurred on the Rocky Boy reservation during the late hours of March 31, or the early hours of April 1, 1995. Victor The Boy and Harold Stump, both Native Americans and enrolled members of the Chippewa Cree Tribe lived on the reservation. Both were killed in the accident that took place on the reservation. They were passengers in the vehicle driven by Dennis Sangray, also a Native American and an enrolled Chippewa Cree living on the reservation. The underlying case stems from tortious conduct between tribal members that happened on the reservation. The case giving rise to the action before me stems from Allstate's conduct, representations and alleged misrepresentations in the handling of the initial tort action.

According to the allegations in the tribal complaint, Allstate denied coverage to the families of the deceased under Sangray's policy, a policy purchased through the Erickson–Baldwin Insurance Agency in Havre, Montana. The Erickson–Baldwin Insurance Agency is not within the exterior boundaries of the Rocky Boy Reservation. Allstate's denial of benefits was based on an argument that the accident happened in the early hours of April 1, while Sangray's policy expired at midnight on March 31, 1995. Various off-reservation communications took place between Allstate and counsel for defendants here (tribal court plaintiffs) on the question of coverage.

The parties negotiated settlement of the underlying tort on its merits. Dennis Sangray was dismissed as a party and four of the five claims for relief were dismissed with prejudice. The only remaining claim for relief in the tribal court action is the unfair claims settlement practices claim.

### DISCUSSION

#### Standard for Injunctive Relief

To obtain a preliminary injunction, a party must show either (1) probable success on the

merits plus the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1201 (9th Cir.1980). To determine whether injunctive relief is warranted in this case, I must assess the merits of the subject-matter jurisdiction claim as it appears on the present record.

## Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A party seeking summary judgment must show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## Subject Matter Jurisdiction in Tribal Court

### I.

Does a tribal court have the power and jurisdiction to resolve a bad faith insurance claim arising from a non-member insurance company's handling of a clear liability claim between members of the tribe when the underlying tort took place within the exterior boundaries of the reservation?

The parties argue that the issue here is governed by the Supreme Court's decision in *Strate v. A–1 Contractors*, 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997). There, the Court held that the tribe could not exercise jurisdiction of a tort claim arising out of a traffic accident on *non-tribal* land within the reservation. *Id.* 137 L.Ed.2d at 668. (Emphasis added). Notably, the Court chose to "express no view on the governing law or proper forum when an accident occurs on a tribal road within a reservation." *Id.*

Here, the accident alleged to be the source of the bad-faith claim happened on tribal land within the reservation. Even so, in my view, the Supreme Court would not alter its analysis in *Strate* with respect to the adjudicatory power of tribal courts over nonmembers based on a geopolitical situs of the wrong doing, standing alone.

This is so because the Court in *Strate* reiterated that "absent express authorization by federal statute or treaty, tribal jurisdiction over the conduct of non-members exists only in limited circumstances." *Id.* 137 L.Ed.2d at 670. The limited circumstances referred to in *Strate* are the two so-called *Montana* exceptions. *Id.* at 670 (citing *Montana v. United States*, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981)) (stating that *Montana* is the "pathmarking case concerning tribal civil authority over nonmembers").

In *Montana*, the Court considered the issue of whether a tribe may "regulate non-Indian hunting and fishing on non-Indian lands within the reservation...." *Montana*, 450 U.S. at 563. The Court rejected the idea that such regulatory authority flowed from the "inherent sovereignty" of the tribe. *Id.*

The Court noted that "through their original incorporation into the United States as well as through specific treaties and statutes, the Indian tribes have lost many of the attributes of sovereignty." *Id.* Tribes have been divested of sovereignty over "the relations between an Indian tribe and nonmembers." *Id.* at 564 (citing *United States v. Wheeler*, 435 U.S. 313, 326, 98 S.Ct. 1079, 55 L.Ed.2d 303). However, the Court described two situations in which "Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservation, *even though on non-Indian fee lands.*" *Id.* at 565 (emphasis added). Thus, *Montana* must be read to apply to the activities of non-tribal members within the boundaries of the reservation, whether or not the activity takes place on Indian or non-Indian land within the reservation. That is so because the qualifying phrase quoted above—"even though on non-Indian fee lands" serves to extend tribal jurisdiction over non-members to activities on non-Indian fee lands, but does not change the general limitations on tribal jurisdiction over nonmembers described in the two exceptions.

■■■ Allstate is not a tribal member. Thus, tribal jurisdiction questioning the handling of the underlying claim must be analyzed under the Montana exceptions. This is

so despite the fact that the personal injury tort took place on tribal land within the reservation. Under the first *Montana* exception tribes "may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribes or its members, through commercial dealing, contracts, leases, or other arrangements." *Montana*, 450 U.S. at 565. Under the second *Montana* exception, the tribes may retain "civil authority over conduct of non-Indians ... [which] threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id.* at 566.

In assessing the application of the two *Montana* exceptions there is no difference between regulatory and adjudicatory authority—the tribe's adjudicatory authority is coterminous with its regulatory authority. *Strate*, 137 L.Ed.2d at 675. Thus, where the tribes may regulate, they may adjudicate.

## II.

Allstate argues that this case does not fall within the first *Montana* exception because the bad-faith claim does not arise out of a consensual relationship with the tribe or its members. It argues that any contract it had was with Dennis Sangray.[1] It entered no contract with defendants here—their claim is a third party claim. Furthermore, Allstate argues that any decisions or communications that might together amount to bad-faith took place off-reservation.

Defendants, on the other hand, argue that the first *Montana* exception applies because Allstate consensually entered insurance contracts with tribal members. Essentially, they argue that the duties of the insurer followed its tribal insured on to the reservation. Thereafter, its tribal insured was involved in an accident within the reservation causing injury to other tribal members. Defendants argue that the consensually entered insurance contract with Sangray carries a duty to deal fairly with third parties. Additionally, Defendants point out that Allstate also insured Vena Stump, a defendant here. Finally, defendants assert that the tribe has

the power to regulate the conduct of insurance on the reservation. As a consequence, they argue, the tribe's adjudicatory power extends to the controversy at issue here.

Before considering the merits of the first *Montana* exception, one argument raised by Allstate must be addressed. The argument is that the bad faith claim arose off reservation and this presents a bar to tribal jurisdiction.

Allstate is correct in one sense: Tribal jurisdiction is territorial. No case has shown that a tribal court has long-arm jurisdiction like that available to State Courts. *See, e.g. International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Thus, some event must happen *within the exterior boundaries of the reservation* before tribal jurisdiction may be invoked. However, in analyzing subject matter jurisdiction, care must be taken to avoid the trap of personal jurisdictional analysis.

■ Here, Allstate argues that any actions that conceivably could constitute bad faith took place off reservation—various communications between counsel and Allstate, discussions on coverage and other issues. Despite the characterization, I am persuaded that the bad faith claim stems directly from the vehicle accident happening on reservation tribal land between enrolled members of the Tribe. The genesis of the bad faith claim lies in Allstate's handling of the claim initiated by that vehicle accident. Thus, Allstate cannot avoid tribal jurisdiction by arguing that the bad faith claim arose off reservation.

That finding leaves open the applicability of the first *Montana* exception. Allstate argues that it did not enter any consensual relationship with defendants here, but concedes that it entered an insurance contract with a tribal member, Dennis Sangray, though pointing out that he is not the tribal court plaintiff. Allstate argues there is no reason to invoke tribal jurisdiction on the basis of a third-party claim.

The Court's resolution of the facts in *Strate* is helpful in analyzing the current

---

1. Sangray was an enrolled member of the Chippewa Cree Tribe when he negligently caused the

death of Harold Stump and Victor the Boy.

problem. In *Strate*, a petitioner Gisela Fredericks was involved in a car wreck with Lyle Stockert and suffered serious injuries. Stockert's employer, A–1 Contractors, was not a tribal member, nor was Fredericks. *Strate*, 137 L.Ed.2d at 668–69. Fredericks brought a negligence action in tribal court.

In discussing the first *Montana* exception, the court characterized the accident as "distinctly non-tribal in nature," arising "between two non-Indians involved in a run-of-the-mill highway accident." *Id.* 137 L.Ed.2d at 677 (quoting Court of Appeals) (alterations to text omitted). Further, the Court noted that although A–1 contractors had a consensual relationship with the tribes (by way of its construction contract), Fredericks was not a party to the contract and "the Tribes were strangers to the accident." *Id.* The Court held that the highway accident at issue did not implicate a consensual relationship and the first *Montana* exception did not apply. *Id.* 137 L.Ed.2d at 678.

■ Here, by contrast, the tribe was not a stranger to the accident. Two tribal members were killed in the accident. Allstate entered a consensual insurance contract with a tribal member, Dennis Sangray. Allstate knew that Sangray lived on the reservation. Allstate knows that contracts of insurance carry third party obligations. The facts giving rise to subject matter jurisdiction here cannot be likened to the off reservation sale of a dozen eggs. The tribal members who died in the accident were parties, as third party beneficiaries, to the consensual insurance contract between Sangray and Allstate.

Accordingly, the tribe may assert civil authority over this claim.

IT IS HEREBY ORDERED:

(1) Allstate's Motion for Summary Judgment and for Preliminary and Permanent Injunction is DENIED.

(2) Defendant's Motion to Dismiss is GRANTED.

