### In re Excusal of
### Judge Lorene Ferguson
### in the Case Tome, et al. v. Marshall, et al.
### Decided March 5, 1998

---

## OPINION

Before AUSTIN, Acting Chief Justice, CADMAN and SLOAN* (sitting by designation), Associate Justices.

Lawrence A. Ruzow, Esq., Window Rock, Navajo Nation (Arizona), for the Petitioner Judge; and James W. Zion, Esq., Navajo Nation Judicial Branch, Window Rock, Navajo Nation (Arizona), for the Respondent Chief Justice.

Opinion delivered by CADMAN, Associate Justice.

The certified question before this Court is whether the Chief Justice of the Navajo Nation can invoke his administrative authority to dismiss a district judge from a case she is presiding over without any party requesting her disqualification. We hold that the Chief Justice erred in this matter.

I

On February 19, 1997, the case of *Tome, et al. v. Marshall, et al.*, No. SR-CV-67-95, was pending in the Shiprock District Court. Prior to that date, the Petitioner, who was then presiding judge in that court, heard various proceedings and made rulings in the case.

On that same day, the Honorable Robert Yazzie, Chief Justice of the Navajo Nation, rendered Administrative Order No. 02-97, entitled, "In the Matter of Excusing a Judge from Presiding in a Case and the Appointment of a Presiding Judge." The order "excused" the Petitioner from the *Tome* case and appointed another judge to preside over the case. The administrative order was issued after a party to the case complained of undue case delay to the Judiciary Committee of the Navajo Nation Council.

The Chief Justice excused the Petitioner from the case for the following reasons:

> [L]itigants in the case of *Tome et al. v. Marshall et. al.*, Cause No. SR-INJ-776-72 (Shiprock District Court) appeared before the Judiciary Committee of the Navajo Nation Council to make a complaint of undue case delay in this matter. Being fully advised in the premises, the Chief Justice of the Navajo

Nation finds good cause to avoid the appearance of impropriety to excuse the Honorable Lorene Ferguson from further presiding in that matter and to substitute a judge to finish the case.

Administrative Order No. 02-97 (February 19, 1997). On February 20, 1997, the Petitioner filed a petition for certified question in this Court.

The Petitioner raises two claims. First, the Chief Justice acted alone, and without the concurrence or input of the associate justices of this Court, when he entered the administrative order. Second, the Chief Justice's action was taken extra-judicially, because no party to the *Tome* case filed a motion for the Petitioner's disqualification in the district court, and neither was an application to disqualify the Petitioner filed with this Court.

The Chief Justice asks this Court not to exercise its discretionary supervisory authority in this matter, because if we grant the petition we would be supervising his decisions as administrator of the judicial branch. We decline to adopt the Chief Justice's reasoning. We believe the certified question is proper, because if we do not decide it, there would be no way to determine whether the Chief Justice's action was correct or not. We therefore grant the petition for certified question.

## II

We begin by clarifying a few points. The Chief Justice's administrative order is not an order of this Court. Neither is it an order issued by the Chief Justice pursuant to his authorized role as presiding justice of this Court. Furthermore, the Chief Justice does not argue that his act of dismissing the Petitioner was done in his judicial capacity as a member of this Court. Instead, the Chief Justice claims that his decision to dismiss the Petitioner from the *Tome* case is a proper use of administrative power granted to a chief justice by statute.

Under Navajo Nation statutory law, the Chief Justice has considerable authority and responsibilities. According to 7 N.N.C. § 371 (1995), the Chief Justice has the dual roles of supervising the work of all judges and justices of the Navajo Nation and presiding as Chief Justice of this Court.

> In addition to his judicial duties, the Chief Justice of the Navajo Nation shall have the duty of supervising the work of all justices and judges of the Navajo Nation and shall have the duty of administering the Judicial Branch. He shall advise the president of the Navajo Nation and Judiciary Committee of the Navajo Nation Council as to whether probationary justices and judges shall be offered permanent appointments.

*Id.*

The Chief Justice contends that the part of section 371 which grants him the authority to supervise the work of all Navajo Nation judges empowers him to remove the Petitioner from the *Tome* case. The Chief Justice argues that he was prompted to remove the Petitioner from the case "when he found good cause to

avoid the appearance of impropriety." Although the Petitioner was not charged with any violation of the Code of Judicial Conduct, the Chief Justice argues that he wanted to prevent one from arising based on the complaint of undue case delay made to the Judiciary Committee.

While the Chief Justice has authority to remove a district judge from a case over which he or she has made rulings under appropriate circumstances, we find that the facts of this case do not warrant the Chief Justice issuing Administrative Order No. 02-97, and effectively dismissing the Petitioner from the *Tome* case. First, evidence was not presented to the Chief Justice upon which he could reasonably conclude that the Petitioner had committed a serious ethics violation which would interfere with or impede her ability to preside over the case. Nothing was presented to him in writing (as is standard procedure) and the complaint of undue case delay was made to the Judiciary Committee, and not to the Chief Justice. Second, no party in the *Tome* case presented to the Chief Justice any evidence that the Petitioner was physically or mentally incapable of presiding over the case. Finally, there is no evidence of any serious misfeasance or malfeasance (such as the commission of a crime), which would warrant the Petitioner's immediate removal from a pending case. Accordingly, we hold that the Chief Justice was not justified in issuing Administrative Order No. 02-97.

Our holding is buttressed by Navajo Nation law addressing the disqualification of judges. The Navajo Nation courts have rules and procedures in place for a party seeking to disqualify a district judge from a case. Complaining to the Judiciary Committee of the Navajo Nation Council is not one of them. The Navajo Rules of Civil Procedure state:

> A judge may be disqualified on the court's filing of an order disqualifying himself or on motion of a party. If a party files a motion for disqualification it must be supported by affidavit showing sufficient facts and grounds for disqualification.
>
> ....
>
> When a judge is disqualified, a copy of the order shall be sent by the court clerk to the Chief Justice who shall name another judge to hear the case.

Nav. R. Civ. P. 40(f)(1), (5). The motion for disqualification must be filed sixty days prior to the trial date, and the district judge, not the Chief Justice, has discretion on the decision. Nav. R. Civ. P. 40(f)(2)-(3). A party may waive his or her right to disqualify a district judge. Nav. R. Civ. P. 40(g) (i)-(iii). An adverse decision can be appealed.

This Court, *en banc*, can also remove a district judge from a case using 7 N.N.C. § 303 (1995). This section authorizes this Court to,

> issue any writs or orders necessary and proper to the complete exercise of its jurisdiction or to prevent or remedy any act of any Court which is beyond such Court's jurisdiction, or to cause a Court to act where such Court unlawfully fails or refuses to act within its jurisdiction.

*Id.*

Section 303 does not authorize the Chief Justice to act alone in removing a trial judge from a pending case. This Court consists of the Chief Justice and two Associate Justices. 7 N.N.C. § 301 (1995). The Chief Justice sits as the presiding justice of this Court. As the Supreme Court, the Chief Justice and the Associate Justices are called upon to review appeals from the district courts and administrative agencies and to review petitions for extraordinary relief. One justice acting alone cannot render a decision for this Court. To permit one justice to make a decision increases the likelihood that an erroneous decision will be made.

Navajo Nation case law also supports the decision we render today. We set forth the procedure for disqualifying a district judge in *In the Matter of Certified Questions II*, 6 Nav. R. 105, 112 (1989) (If any grounds for disqualification of a district judge exists, they must be presented to the district court and ruled upon by that court in the first instance). In exceptional circumstances, a party may directly ask this Court to disqualify a district judge through a petition for writ of prohibition. *Plummer, et al. v. Honorable Judge Harry Brown*, 6 Nav. R. 88 (1989). This procedure was used to remove a district judge from a case and another judge appointed in *The Navajo Nation ex rel. Faith v. Lynch*, 1 Nav. R. 178 (1977). There is clearly no need for the Chief Justice to create an extra-judicial remedy and unilaterally remove a district judge from a case when we have abundant procedures, rules, and decisional law available to handle the process.

Finally, there are public policy reasons which we take into account. The Chief Justice's action creates the appearance of a supreme court justice meddling in a district court case. The Navajo Nation justices and judges must act in ways which do not undermine public confidence in the integrity of the Navajo Nation courts. The Navajo Nation court system has earned the praise, the "flagship" of Indian nation courts, Taylor, Modern Practice in the Indian Courts, 10 *U. Puget Sound L. Rev.* 231, 236 (1987), because it is a system governed by principles of Navajo law and Navajo concepts of justice. The Navajo Nation court system operates from the principle that it is a part of a government of law and not of men.

All the parties to a case have a basic right to a fair and impartial judge. If the Chief Justice, acting alone and using his administrative powers, can remove district judges, there is the risk that parties may attempt to use political influence to decide cases. While we are not sure if political pressure underlies the Chief Justice's action in this case, the administrative order shows the complaint of undue case delay was made to a political body, the Judiciary Committee, and the Chief Justice acted after that body advised him of the matter.

The removal of the Petitioner after she presided over part of the proceedings will undoubtedly affect the merits of the case. While trial has not taken place in the *Tome* case, the lesson is that a litigant should not have to face different judges throughout the proceedings. *See, Benally v. Black*, 5 Nav. R. 137 (1987).

For the reasons stated above, we hold that Administrative Order No. 02-97 is invalid.