OPINION

Appellant Gene Manning (husband) appeals from a May 15, 2008 Decree of Dissolution of Marriage (Final Divorce Decree) from Francesca Abeita (wife) entered by the Tó’hajiilee Family Court. On appeal, husband contends that the family court erred primarily in failing to follow evidentiary rules and procedural rules of court. For the following reasons after careful review, the decree entered by the family court is affirmed in part and reversed in part, with a limited remand.
I.
The record shows that husband and wife began their relationship as high school students in 1999. While both were living with wife’s parents, two children were born to them on October 1, 2000 and June 28, 2004. On August 21, 2004, the parties stipulate that they married in Las Vegas, Nevada by signing a marriage license in front of two witnesses. On February 1, 2008, husband filed a fill-in-the-blanks pro se petition in the Tó’hajiilee Family Court asking for a divorce on the grounds that the parties’ August 21, 2004 marriage had irretrievably broken down. He asked for joint legal custody of the children with physical custody to wife. He listed the children as “born of the marriage,” however their births pre-dated the asserted marriage date. He stated that there was no community property or debts for the court to consider. Finally, he asked the court to restore wife’s maiden name of “Abeita.” No marriage license was attached to the petition. Wife did not file an answer.
A month later, the court sent the parties a Notice of Final Hearing scheduled for April 15, 2008. Both parties appeared pro se. The trial judge dispensed with civil procedure formalities and asked questions directly of the parties. Pursuant to the judge’s questioning at this final hearing, the parties stipulated to the August 21, 2004 marriage date, to joint legal custody of the children with physical custody to wife, and to a date of separation. The parties were also questioned in great detail concerning property and debt division and income calculation for child support. Upon wife’s verbal request and over husband’s objection, the judge also addressed alimony and received testimony on wife’s “debilitating back condition.” At the con- *52 elusion of this hearing, the parties were verbally ordered to bring documentation regarding income and expenses to a supplemental hearing scheduled for May 13, 2008.
At the supplemental hearing, the judge sua sponte suggested to the parties that the marriage be validated as of a date prior to the birth of the parties’ older child, since husband had filled in their names in his petition under the section “children born of the marriage.” The transcript shows that wife agreed. However, husband’s response was not audible—a “non-verbal response” being noted on the transcripts.
On May 15, 2008, the court issued the Final Divorce Decree validating the parties’ relationship as a common-law marriage beginning July, 1999, dissolving the marriage, disposing of the community property and debts, awarding wife sole legal and physical custody with liberal visitation in husband, awarding current and arrearage child support, and three-years alimony. On June 3, 2008, husband, through counsel, filed a Motion for Relief from Final Decree of Divorce, to Alter or Am,end Judgment, for New Trial, to Stay Enforcement of Previous Judgment Pending Decision, for Disqualification of Judge (hereafter “Motion”). In his motion, husband asked the court to vacate the decree, arguing inter alia that the findings and conclusions as to validation of common-law marriage, alimony, child support, custody and community property and debt were based on improper evidentiary standards and stipulations to numerous issues which the parties did not stipulate to. He further claimed bias by the judge due to a relationship by marriage to wife. Additionally, husband claimed surprise due to claims not pled and lack of counsel in order to understand the proceedings and help him make legal arguments.
At a motion hearing on August 7, 2008, the judge said he would appoint counsel for wife since husband had now procured counsel. In due course after wife, through counsel, filed a response to the motion, and husband subsequently replied, the court issued an order on November 24, 2008 denying all relief requested in the Motion on the basis that (a) the parties had agreed to most of the findings in the Final Divorce Decree; (b) a party proceeding pro se and losing is not grounds for overturning a judgment; (c) the court’s conclusions were supported by evidence; and (d) the judge had no relation to either party through marriage.
Husband filed this timely appeal on December 19, 2008. Husband asserts the family court erred in failing to hold a pretrial conference, in allowing alimony to be claimed during the proceedings without proper pleading or notice; in failing to require sworn testimony from husband and wife; in not following rules of procedure and evidence; in not convening a further hearing after indicating such a hearing was necessary to receive evidence; in failing to first validate the parties’ marriage before determining issues of property and debt; in incorrectly calculating child support; in awarding wife alimony; in failing to recuse himself; and in summarily denying the Motion.
II.
The primary issue before this Court is whether the family court properly followed Navajo Nation procedural and ev-identiary rules of court in the parties’ pro se divorce action. Whether or not our rules were properly applied is a legal determination which we review' de novo. The discretionary decisions of the family court in the divorce decree shall be examined under an abuse of discretion standard. Watson v. Watson, 8 Am. Tribal *53 Law 361 (Nav.Sup.Ct.2010) citing Higdon v. Nelson, 7 Nav. R. 158, 159 (Nav.Sup.Ct.1995).
III.
In this case, the trial judge conducted an informal proceeding as a “final hearing” two months after the petition was filed by husband when wife failed to answer, and accepted a verbal claim for alimony made by wife during that final hearing. No hearing prior to this final hearing was ever convened. The threshold question is whether the applicable rules of court in divorce proceedings permit a “final” hearing to be conducted informally with relaxed evidentiary and procedural rales.
We note that the Navajo Rules of Civil Procedure (Nav. R. Civ. P.) are taken practically verbatim from the Federal Rules of Civil Procedure. The rules show that Navajo Nation courts were modeled on the formal adversarial American system of justice wherein parties’ opportunity to speak is tightly controlled by the court through its rules. We have our own Diñé dispute resolution processes that are not rule-based and allow for more voice and control by the parties themselves. K’é— principles of relationship, courtesy and respect—“is the prevailing law to be applied” in our traditional methods. See Ben v. Burbank, 7 Nav. R. 222, 224 (Nav.Sup.Ct.1996). Since our courts were established in 1959, decades of efforts have gone into explaining and inserting Diñé tradition and custom into court processes. According to the 1991 Navajo Nation Code of Judicial Conduct:
While the Navajo Nation courts generally follow the state model of justice, i.e. the adjudication method (where a judge decides the comparative merits of the arguments of two or more parties), that system is alien to the Navajo common law. Traditional Navajo justice methods rely upon adjusting the differences of equals, in mediation and the free discussion of problems, to resolve them by consent. It does not rely upon a superi- or decision-maker, who imposes decisions upon others. It does not use coercion or force, and is instead based upon an agreed need for harmony in the community.
Id., Preamble.
In accordance with the above philosophy, Canon One of the Code of Judicial Conduct, imposes an obligation on judges to “apply Navajo concepts and procedures of justice, including the principles of maintaining harmony, establishing order, respecting freedom, and talking things out in free discussion.” M, Canon One.
We have also stated:
Since time immemorial the Navajo people have applied their customs and traditions in dispute resolution. Even with the Navajo Court of Indian Offenses, the Navajo judges of that court, under often adverse circumstances, continued to apply Navajo customs and traditions in cases brought before them. Navajo courts of today are no exception, they apply customs and traditions as the laws of preference.
Id. citing Navajo Nation v. Platero, 6 Nav. R. 422, 424 (Nav.Ct.App.1991).
The development of our court system plainly imposes a duty on our Navajo Nation judges to use Diñé methods of informal discussion whenever permissible, primarily to aid horizontal decision-making by the parties themselves. The question is when and how such methods are appropriately used in a civil proceeding.
We find that our rules of civil procedure clearly provide a window for a court to informally proceed using Diñé methods of dispute resolution. Nav. R. Civ. P. Rule 16(a) authorizes the court to hold a pretrial *54 eonference(s), for purposes that include “facilitating the settlement of the case” during which the court is not constrained by rule-based formalities.[1] It is our understanding that judges in the federal courts are increasingly relying on their identical provision in their civil procedure rules to undertake informal mediation activity after obtaining the express consent of the parties, even caucusing with parties individually in separate rooms if that proves helpful to settlement.[2]
It has been said that mediation by a trial judge acting during federal case management conferences is “a very powerful tool, and if used skillfully and correctly, can produce results that have great benefit to counsel, the parties, and [the American] system of justice.”[3] The benefits of decision-making by the parties themselves, with guidance from a principled leader, has long been known to the Diñé. For centuries, before the advent of American-style courts, this had been the only dispute resolution used on our sovereign soil.
The importance of using a cultural approach whenever permissible, whether in our courts or in peacemaking, cannot be overstated.
We have rule-based and traditional Diñé dispute resolution methods in our courts. We encourage the use of traditional methods, especially in family matters. The family is the core of Navajo society. Davis v. Means, 7 Nav. R. 100, 103 (Nav.Sup.Ct.1994). We have stated: “The eternal fire burning in the center of the hogan is testament that the family is central to Navajo culture and will remain so in perpetuity.” Id, However, in today’s society, a court session cannot be turned into a peacemaking session without warning and consent.
In this case, the trial judge dispensed with formal rules and convened a single Final Hearing, followed by a brief supplemental hearing, to collect information, seek stipulations, and dispose of all non-stipulated issues in regard to the parties’ divorce. Essentially, the judge failed to follow a properly structured process in the use of two very different methods of dispute resolution. In our dual-culture courts, our rules require there must be observed the two stages: (1) the pretrial conference wherein settlement is facilitated and horizontal decision-making is encouraged using informal methods, including Diñé traditional methods; and (2) the trial phase.
The Navajo Rules of Civil Procedure do not provide judges the authority to truncate proceedings in the manner shown in this case, especially when a matter involves pro se parties. Because the judge did not use efforts to distinguish the two stages, we find that this was his error, arising to an abuse of discretion. We hold that a court must maintain the distinction between pretrial and trial hearings. If courts maintain this distinction, then the use of traditional methods in our court system will work.
*55 This Court recognizes that our judges are in the often untenable position of reconciling two competing philosophies in the courtroom. The philosophies give rise to competing methods of behavior. The formal style supports an approach entirely reliant on detailed protocols while the traditional Diñé method supports decision-making and control in the hands of the parties. Both methods have protections. The traditional method requires that the parties themselves decide. The formal method constrains decision-making by the judge via formal rules.
 Husband claims multiple procedural errors. However, we will not allow a complete reversal because, through the judge’s efforts, the parties apparently did plainly stipulate that they want a divorce, that they were married in Las Vegas on August 21, 2004, that they are the parents of the children, and that physical custody of the children shall go to wife. The parties will be held to these stipulations. Navajo law provides that a father’s obligation to provide support for his children is “absolute.” Leuppe v. Wallace, 8 Nav. R. 274, 278, 4 Am. Tribal Law 625 (Nav.Sup.Ct.2003) citing Notah v. Francis, 5 Nav. R. 147, 148 (Nav.Sup.Ct.1987). Therefore, husband’s child support obligation of $470 per month, which excludes arrears, shall not be disturbed.[4]
Otherwise, the record shows no clear agreement as to the remaining matters of property division, child support arrears, and alimony. Specifically of concern to this Court is the trial court’s acceptance of verbal counterclaims at a final hearing and sua sponte validation of a common law marriage at a supplemental hearing, which extended the parties’ period of marriage by five years back to 1999, with significant impact on community property and debt. The record shows that husband objected to the verbal counterclaims, the parties did not request common-law marriage validation, were not aware of the impact on community property and debt, and the parties were not questioned on the elements of establishing such a common-law marriage as set forth by 9 N.N.C. § 4(E). The judge erred in considering the verbal counterclaims and in getting involved in validating a common-law marriage when the parties had stipulated to a formal Las Vegas ceremony. Additionally, the judge also erred in awarding sole “legal” custody of the children to wife even though the record shows that the parties stipulated to joint legal custody, with physical custody to wife.
We affirm the judge’s decision not to recuse himself, as he denies knowledge of any relationship by marriage to wife. Nonetheless, this case on remand is to the Tó’hajiilee Family Court pursuant to the normal practice that a case is remanded to a court, not a judge. We take judicial notice that the judge in this case is no longer with the Tó’hajiilee Court.
There is the absence of an answer filed by wife. As in the federal rules, our rules require an answer to be filed otherwise “a default judgment may be entered against him.” Nav. R. Civ. P. Rule 4(b)(1)(G) and 7(b). If not filed, statements in the petition shall be deemed denied. Rule 8(b). In practice, courts normally go through each matter in a petition or complaint with the party who failed to answer in order to determine if it is admitted or denied. A review of the record transcripts show that this was not done in this case.
*56 We hold that courts have the responsibility, in a pretrial conference, to go through each matter in a petition or complaint with the party who failed to answer, or in the alternative, give that party an opportunity to file an answer, in order to determine if a matter is admitted or denied or if there are counterclaims before adjudicating the case. Answers or counterclaims shall not be accepted verbally or otherwise at a “final” hearing.
IV.
Pro se litigants are at a disadvantage in any court system, let alone a system that carries within it two competing philosophies and methods. Therefore, we find that such litigants must be explained their options in civil proceedings, especially in family cases where traditional methods are the preferred proceedings to be employed per Rule 16 and the Code of Judicial Conduct. We have stated, in connection with knowing and intelligent waivers in a criminal proceeding, that simply providing a defendant with an “advice of rights” form without also explaining each of these rights in English or Navajo is not enough. Navajo Nation v. Rodriguez, 8 Nav. R. 604, 610, 6 Am. Tribal Law 473 (Nav.Sup.Ct.2004). Rights are concepts whose meanings need to be understood. A court cannot have the person sitting before it puzzled due to a lot of legalese. We must ensure that pro se litigants are informed of what it means to pursue a pro se representation, otherwise, there will always be an argument that parties do not know what is happening.
The judicial districts have the responsibility for instructing the pro se litigants, which may include development of a standard explanation so that all people who want to proceed pro se in a divorce, child support or child custody will have a presentation done for them. There is no doubt that pro se litigants must be aware of their options regarding the processes of the court before they participate in settlement or substantive hearings.[5]
CONCLUSION
We AFFIRM the dissolution of marriage effective May 15, 2008, and further AFFIRM the family court’s finding of parentage, award of physical custody of the children to wife with liberal visitation to husband, and award of child support.
The parties’ marriage date SHALL be amended to reflect the formal marriage ceremony date of August 21, 2004 per the parties’ stipulation. Legal custody of the children SHALL be amended to show joint legal custody to both parties, with physical custody to wife.
We VACATE the family court’s award of alimony, and award of child support arrears between the date of separation and date of divorce, because these had not been properly pled. We further VACATE the family court’s validation of common-law marriage going back to June 1999 due to lack of compliance with 9 N.N.C. § 4. These matters shall not be reopened upon remand.
We REMAND for fresh findings and stipulations concerning community property and debts that shall not include all property and debt accumulated prior to the August 21, 2004 marriage date and after May 15, 2008. Any unpaid child support obligations following the date of divorce may be addressed. The family court is ORDERED to schedule a pretrial conference within 45 days.
*57 Within 90 days, the family court is ORDERED to reissue a divorce decree nunc pro tunc, consistent with this opinion and with findings of fact and conclusions of law on the limited matter being remanded.

. Specific rules otherwise exist permitting entirely informal proceedings in specific categories of cases. E.g., the Navajo Rules of Domestic Violence Proceedings, promulgated on October 2, 1993, permits informal proceedings with pro se parties when addressing "domestic violence in conjunction with divorces, child custody proceedings, child protection matters, domestic relation cases, probates, land disputes, or any other action pending before the [family] court,” Nav. R. Dom. Viol. Proceedings, Rule 2.2 and 2.13.

. Dan Aaron Polster, The Trial Judge as Mediator: A Rejoinder to Judge Catsley, Mayhew-Hite Report, Vol. 5, Issue 1.

. Id.

. However, we note that through the filing of a new petition, husband or wife may seek adjustments of the amount of support obligation, modify child custody, and other related matters.

. An administrative order will be issued instructing the Administrative Offices of the Court to immediately work with the judicial districts to develop this instruction.