OPINION

A single mother of toddler child filed a petition for an extraordinary writ against the Kayenta Family Court requesting: (1) the removal of the presiding family court judge from a paternity and child support action, and (2) an examination of the family court’s mandatory use of custody evaluators in all child custody proceedings. An alternative writ was issued and a show cause hearing was held, resulting in the issuance of a permanent writ to remove the presiding judge. As to the custody evaluation issue, this Court holds that the family court’s established practice of automatically referring parties in all child custody actions to custody evaluators in the state of Arizona is not authorized by Navajo law.
I
Dawnae Ashkii (Mother) filed a petition in the Kayenta Family Court to establish paternity and child support against the Real Party in Interest (RPI), a non-Indian resident of the state of Texas and the purported father of her 16-month-old child. Mother claimed RPI had previously signed an Acknowledgment of Paternity in the District Court of Fort Bend County, Texas and was subsequently adjudicated as the biological father of the child on September 15, 2011. However, RPI denied paternity of the child claiming that his signature on the acknowledgment was forged and insisted that paternity be established through DNA testing. The family court promptly set the matter for a pretrial conference on February 5, 2013. At the hearing, the family court initially granted mother’s motion for continuance of the pretrial conference so she could secure legal representation but then proceeded with the hearing and allowed RPI’s legal counsel to raise the disputed issues of the case. RPI’s attorney informed the fam *303 ily court that RPI would proceed with paternity testing and would seek custody if he was found to be the biological father. Relevant portions of the audio recording from the pretrial conference reveal the following:
Judge: Say your client is found to be the biological father, 1 guess we can address that at pretrial, whether or not he will be asking for custody of the minor child.
RPI’s Attorney: He does want joint custody Your Honor, if he is the father.
Judge: Okay.
RPFs Attorney: And I assume it has been the court’s practice that we submit it to a custodial evaluator.
Judge: Yes Sir. If he is found to be the father then he wants joint custody. So what is going to happen is then my standard is you would have to submit to a custody evaluator. Custody evaluator is $2,000.
Mother: That’s the cost?
Judge: Yes. That would be $1,000 for him and a $1,000 for you. It has to be paid. I don’t use the Division of Social Services.
Mother: But I’m wanting custody.
Judge: Okay, well that’s what I’m saying. We go to a custody evaluator. So make sure you start making those arrangements if he is found to be the father. Then we automatically refer this to a custody evaluator. Custody evaluator on both sides is $1,000.
Mother: And if that is not paid?
Judge: You lose custody of the child.
Judge: I am a stickler to this. So please make sure you start making arrangements because if he is, then we go to custody evaluator.
(Emphasis added.) Following the pretrial conference, RPI was confirmed to be the biological father of the minor child through DNA testing and the parties were ordered to submit to an evaluation by a private custody evaluator in the state of Arizona. Mother subsequently filed a hand-written letter that this Court accepted as a petition for an extraordinary writ, seeking the removal of the presiding family court judge based in part on the judge’s open-court statements as to custody and an examination of the family court’s established practice of referring child custody matters to an external custody evaluator at a substantial expense to the parties.
In exceptional circumstances, a party may directly ask this Court, en banc, to disqualify a district court judge through a petition for an extraordinary writ. In re Excused of Ferguson, 7 Nav. R. 320, 323, 1 Am. Tribal Law 489 (Nav.Sup.Ct.1998). An alternative writ was issued and a show cause hearing was heard by this Court on June 26, 2013. At the conclusion of the June 26th hearing, this Court found mother had a basic right to a fair and impartial judge and, thus, issued a permanent writ against the family court finding exceptional circumstances which required the removal of the presiding judge for violations of the Code of Judicial Conduct, namely, the judge’s duty to act impartially and to avoid impropriety. NAVAJO NATION CODE OF JUDICIAL CONDUCT Cannons 1, 7 (1991). A separate order was issued regarding the judge’s removal and we need not restate our decision in this opinion. As to the issue of the family court’s mandated custody evaluation referral, we find the Kayenta Family Court’s established practice in violation of Navajo law. We now issue this opinion to explain our decision,
II
The family court’s mandatory “court practice” of automatically requiring parents in all child custody disputes to *304 submit to an evaluation by a custody evaluator in the state of Arizona is in violation of Navajo law. The Court takes judicial notice that our neighboring jurisdiction, the State of Arizona, mandates the use of conciliation services for cases involving “controversy” over child custody or visitation, as authorized by the Arizona Rules of Family Law Procedure, specifically Rule 68(B) of the Arizona Rules of Family Law Procedure which states “all family law cases that involve a controversy over child custody or parenting time shall be subject to mediation or other alternative dispute resolution or process provided for in local rules.” [1] (Emphasis added). Unlike Arizona, the Navajo Nation does not have procedural rules or statutes that require all child custody cases (whether disputed or not) to be submitted to mediation or child custody evaluation services. There is also no authority bestowed upon the family court to establish local rules to implement such a requirement. Likewise, in Arizona, the court-appointed custody evaluator or parenting coordinator is cloaked with judicial immunity consistent with Arizona law applicable to quasi-judicial officers of the court as to all actions taken pursuant to that court appointment. The Navajo Nation has no comparable statute.
Our courts do have the Navajo Rules of Civil Procedure which provide guidance in all civil cases, including ehild custody cases. Navajo law, including Diñé bi bemahaz’áxmii encourages resolution of disputes by the parties themselves, especially in family matters. This Court has stressed the importance of Rule 16(a) of the Navajo Rules of Civil Procedure, which authorizes courts to hold pretrial conferences for purposes that include “facilitating the settlement of the case.” Our courts have been equipped for years with tools that permit the use of pre-trial rule-based and traditional Diñé dispute resolution methods. Manning v. Abeita, 10 Am. Tribal Law 49 (Nav.Sup.Ct.2011). In Manning, this Court emphasized the duty of our courts to use Diñé traditional methods of informal dispute resolution whenever permissible to aid horizontal decision making by the parties themselves. Id., 10 Am. Tribal Law at 53-64. Diñé traditional methods promote decision-making by the parties by providing them with the necessary control, guidance, and authority to resolve their conflicts. Courts should therefore encourage the parties to consider the option of referring a dispute to Peacemaking before subjecting parties to a decision from the bench.
Judges are obligated to “apply Navajo concepts and procedures of justice, including the principles of maintaining harmony, establishing order, respecting freedom, and talking things out in free discussion.” NAVAJO NATION CODE OF JUDICIAL CONDUCT, Cannon 1 (1991). In matters of dispute, Navajo courts have a duty to determine which methods, including Diñé traditional methods, should be used in order to help parents reach agreements as to custody and visitation. Parties must be fully informed of their options, especially in family cases where traditional methods are the preferred proceedings to be employed per Rule 16 and Canon One of the Code of Judicial Conduct. Manning, supra, 10 Am. Tribal Law at 55-56. Parties that come before the courts of the Navajo Nation, including attorneys, advocates, and pro se individuals are expected to come together in good faith to agree on a process to resolve their dispute, attempt to reach an agreement, and report the outcome of their efforts to *305 the court. Thus, there is no need for the family court to automatically defer to custody evaluation services in neighboring jurisdictions.
Peacemaking, the Diñé traditional method of dispute resolution, is available through the Peacemaking Program. Its purpose is to promote family harmony consistent with Navajo Nation statutes and Diñé bi beenahaz’áanii. The benefits of decision-making by the parties themselves, with guidance from a principled leader, have long been known to the Diñé. Manning, supra, 10 Am. Tribal Law at 54. For centuries, before the advent of the modern adversarial system of litigation, this was the only dispute resolution used on our sovereign soil. Id. Agreements as to child custody and visitation made by the parents themselves are in the best interest of the child and are often honored by the parents themselves without further litigation. The court should not mandate child custody evaluations where they are not provided for by law. Further, courts are prohibited from forcing parties to pay for such expensive services by implying that a parent’s custodial rights are governed only by their ability to pay. Here, the judge’s direct response to the mother’s concern shows that if a parent does not pay their share for custody evaluation services the court automatically decides that parent will lose custody of their child. A family court’s decision as to custody based solely on a party’s inability to pay is contrary to any sense of fairness and does not serve the best interests of the child.
The court has several options available to it, other than involving a custody evaluator, if it needs to assemble additional information before it makes a child custody determination. The family court may appoint a guardian ad litem to represent the best interests of the child and inform the court by written report on matters regarding the background, environment, needs, and wishes of the child. Likewise, the family court may also appoint a special master to report on particular issues, which may include factors relevant to child custody, upon a showing that special conditions require an appointment. See Rule 53, Nav. R. Civ. P. To a limited extent, the Navajo Nation Division of Social Services (DSS) conducts home study investigations at no cost to parents. DSS meets with the parents and children, evaluates the circumstances and informs the judge of what arrangements are in the best interests of the child. In these situations, the judge will then make a decision after a review of the evaluators report, the testimony of the parties, and any other relevant evidence. In recognizing DSS’s limited resources, only disputed child custody cases should be referred to it. This Court understands the services provided by custody evaluators may sometimes be helpful to the courts in custody matters. Custody evaluators, however, are costly[2] and should be used by agreement of the parties rather than through a mandatory court referral. Stipulations made without the court’s involvement are strongly encouraged.
Pursuant to our choice of law statute, “the courts of the Navajo Nation shall first apply applicable Navajo Nation statutory laws and regulations to resolve matters in dispute before the Court.” 7 N.N.C. § 204. The courts are mandated to utilize Diñé bi beenahaz’áanii to guide the interpretation of Navajo Nation statutory laws and regulations. The courts shall also utilize Diñé bi beenahaz’áanii whenever Navajo Nation statutes or regu *306 lations are silent on matters in dispute before the courts. 7 N.N.C. § 204(A). The courts shall apply federal laws or regulations as may be applicable. 7 N.N.C. § 204(B). As a last resort, any matters not addressed by Navajo Nation statutory laws and regulations, Diñé bi beenahaz’áa-nii or by applicable federal laws and regulations, may be decided according to comity with reference to the laws of the state in which the matter in dispute may have arisen. 7 N.N.C, § 204(D) (emphasis added). The customs and traditions of the Navajo people have the force of law. Navajo Nation v. Platero, 6 Nav. R. 422, 424 (Nav.Sup.Ct.1991). It is only in a situation where there is no tradition or custom that the Courts are authorized to apply state law. See Johnson v. Johnson, 3 Nav. R. 9, 10-11 (Nav.Ct.App.1980). Courts should carefully make certain that the matter is “not covered” by Navajo law before considering or proceeding to the use of state law. Johnson v. Dixon, 4 Nav. R. 108, 110 (Nav.Ct.App.1983).
The family court’s mandatory practice of using external custody evaluators at best inadequately promotes and at worst undermines the concepts of k’e’ and hozho in child custody proceedings. Navajo custom and tradition is one of many factors to be considered in child custody matters. Lente v. Notah, 3 Nav. R 72 (Nav.Ct.App.1982). The Dine have always been guided and protected by the immutable laws provided by the Holy People, providing sanctuary for the Dine Life Way while guiding, sustaining and protecting the people since time immemorial. See 1 N.N.C. Ch. 2, CN-69-02, pmbl. whereas cl. 2 (November 1, 2002). A statutory duty is imposed on our Navajo leadership to preserve, protect and enhance the Diñé Life Way and the sovereignty of our people and our government. See id., at whereas cl. 3. By statutory law, “[tjhe leaders of the Judicial Branch shall uphold the values and principles of Diñé bi beenahaz’áanii in the practice of peacemaking, obedience, discipline, punishment, interpreting laws and rendering decisions and judgments[.]” 1 N.N.C. § 203(E). Accordingly, judges are deemed not only to be leaders but also teachers and holders of Diñé bi beena-haz’áanii.
In this case, the family court surrendered its sacred responsibility to an outside custody evaluator who, more likely than not, is unaccustomed with Dine traditional laws and values. A judge cannot shirk this sacred duty by simply assigning the court’s responsibilities to an outside party who may be unaccustomed to our beliefs and teachings. Diñé bi beena-haz’áanii is best promoted and articulated by and through a Navajo judge, the actual third-party evaluator in all Navajo court cases. It is a Navajo judge’s duty as an independent, third-party evaluator to weigh important factors related to home-life and parental duties when considering child custody. Lente, 3 Nav. R at 78-79. The mandatory use of custody evaluators in neighboring jurisdictions does not promote Navajo justice nor does it espouse the judge’s responsibility as mandated bylaw. Furthermore, the family court’s long-standing practice of referring its child custody cases to one particular child custody evaluator essentially promotes the sole-sourcing of services without any opportunity for other experts and consultants to offer competing services. This is contrary to the requirements of the Navajo Nation Business Opportunity Act, 5 N.N.C. §§ 201 et. seq.
Our rules of civil procedure as well as tradition and custom are available to the family court to help adjudicate matters that come before it. There is no need for the family court to mandate, by rigid court practice, parties in all child custody cases *307 “automatically” submit to child custody evaluation services in another jurisdiction. The Court finds the Kayenta Family Court’s mandatory use of custody evaluation services is not authorized by Navajo law, and it amounts to lawmaking, which is not a function of the court.
Ill
The Court hereby HOLDS the family court’s non-discretionary court practice to automatically refer parties in child custody proceedings to custody evaluators in another jurisdiction with po consideration for their ability to pay is a violation of Navajo law. The Court hereby ORDERS the Kayenta Family Court to IMMEDIATELY CEASE the practice described herein.

. A cursory review of child custody evaluation services on the internet reveals custody evaluations can range in cost from $2,000 to $t 0,000 in the state of Arizona.