**David Clark & Brenda Clark,**
**Plaintiffs/Appellants,**
v.
**Grace Allen, for the Estate of Nelson Allen,**
**and Mid-Century Insurance Company,**
**Defendants/Appellees.**
**Decided September 29, 1999**

## OPINION

Before YAZZIE, Chief Justice, AUSTIN and *SLOAN (*by special designation), Associate Justices.

Daniel M. Rosenfelt, Esq., and Michael J. Barthelemy, Esq., Albuquerque, New Mexico, for the Appellants; and James E. Ledbetter, Esq., and Justin G. Vaughn, Esq., Cottonwood, Arizona, for the Appellees.

Opinion delivered by Austin, Associate Justice.

## I

In August 1997, David and Brenda Clark ("Appellants"), filed this action against Nelson Allen ("Allen") and his insurance carrier, Mid Century Insurance Company ("Mid-Century"), complaining of personal injuries and bad faith insurance settlement. An automobile accident which occurred within the exterior boundaries of the Navajo Nation brought on this lawsuit.[1] The Appellants and Appellee Allen are enrolled Navajo tribal members and live on the Navajo Nation. Appellee Mid-Century is a non-Navajo owned company with an office off the Navajo Nation in Flagstaff, Arizona. In their complaint, the Appellants claimed that Mid-Century tendered two checks to them for payment of a rental car deposit, and then later claimed that the checks constituted a full and final settlement of all their personal injury claims.

In January 1998, Mid-Century and Allen filed a motion to dismiss the complaint on two grounds: 1) The Kayenta District Court lacks subject matter jurisdiction over the action because the settlement contract resulting in the bad faith

---

1. The district court did not make findings on where the accident occurred, although the Appellants alleged in their complaint that it happened on U.S Highway 160, within the exterior boundaries of the Navajo Nation.

insurance settlement claim was negotiated and signed off of the Navajo Nation in Flagstaff, Arizona; and 2) The checks the Appellants received and endorsed constituted a full settlement of all their personal injury claims arising from the accident.

On March 24, 1998, the district court ruled that it had subject matter jurisdiction over the action, including the bad faith insurance settlement claim. The court did not make any findings of fact or conclusions of law to support its jurisdictional ruling. The court then entered summary judgment for the Appellee after reviewing the affidavits of all the parties in the case.[2] The district court rested its judgment on the Appellants' actions of endorsing the checks issued by Mid-Century containing a stamped statement of release. The release reads as follows: "Endorsement of this check constitutes a release of all claims, known or unknown, the undersigned has or may have against the payor, their principals, agents, successors and assigns." The district court found the release "ambiguous and subject to more than one meaning," but nonetheless ruled that there was no genuine issue of material fact as to the Appellants' understanding of the release, because a Mid-Century insurance agent had explained the release to them. The Appellants continue to maintain that they did not know they were settling their personal injury claims for $300 each by endorsing their checks.

## II

We look at the issue of jurisdiction first. Mid-Century claims that the Navajo Nation courts do not have subject matter jurisdiction over the Appellants' bad faith insurance settlement claim because the cause of action arose off of the Navajo Nation. On the contrary, the Appellants claim that their bad faith insurance settlement claim is tied to the underlying automobile accident which happened on the Navajo Nation. This is a genuine jurisdictional dispute, but the district court did not make factual findings and legal conclusions from which we could draw an informed decision.

We believe these are some of the crucial questions that need answering: 1) Is U.S. Highway 160 like the state highway in *Strate v. A-1 Contractors*, 520 U.S. 438 (1997)?; 2) Does Mid-Century do business on the Navajo Nation or do its insurance agents come onto the Navajo Nation to further its business?; 3) What was the extent of Mid-Century's contacts with the Navajo Nation when negotiating the Appellants' claims?; and 4) Is the bad faith insurance settlement claim a separate tort action independent of the underlying insurance contract and the accident? These questions are not exclusive.

---

2. There is a question whether this was a Rule 12 (b)(6) or a Rule 56 (c) dismissal - the final order cryptically notes that this was a Rule 58 (b) dismissal. Were this a Rule 12(b)(6) dismissal, we would review the complaint for sufficiency; were it a Rule 56(c), we would review the factual record *de novo*, as we are in the same position as the district court to determine the appropriateness of summary judgment. *See Benalli v. First Nat. Ins. Co.*, 7 Nav. R. 329 (1998). Given that the dismissal was based, apparently, on the district court's review of affidavits, this cannot logically be a Rule 12 (b)(6) dismissal - rather, it is one for summary judgment.

Accordingly, we vacate the district court's decision on the jurisdictional issue. On remand, the court will make detailed factual findings on whether the bad faith insurance settlement claim arose on or off of the Navajo Nation, and apply all relevant Navajo Nation and federal law to decide whether it has subject matter jurisdiction over the case at hand. Particular attention should be given to those federal cases that address tribal subject matter jurisdiction, including *Montana v. United States*, 450 U.S. 544 (1981), *Strate v. A-1 Contractors*, 520 U.S. 438, *Allstate Indemnity Co. v. Stump*, 191 F.3d 1071 (9th Cir. 1999), *Allstate Indemnity Co. v. Stump*, 994 F. Supp. 1217 (D. Mont. 1997), and *R.J. Williams Co. v. Fort Belknap Housing Authority*, 719 F.2d 979 (9th Cir. 1983). Again, this list is not exclusive.

The district court will still abide by the minimum contacts standard adopted by this Court in its jurisdictional analysis. *See, e.g.. Sells v. Espil*, 6 Nav. R. 195 (1990); *Billie v. Abbott*, 6 Nav. R. 66 (1988); *Burger King Co. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

## III

Turning to the question of the validity of releases as tools of settlement, we request that on remand the Kayenta District Court make specific, factual findings, in accordance with our law as set forth below:

> Generally, a valid settlement which includes a release of claims ... requires that the intention to discharge another from the claim be manifest, that mutual assent to a compromise reached through negotiation be evident, and that sufficient consideration exists to support the release.

*Amigo Chevrolet, Inc. v. Lee*, 6 Nav. R. 31, 33 (1988). The district court's finding that the language contained in the release was ambiguous does not support a finding of "mutual assent" and "sufficient consideration," thus, its granting of summary judgment was inappropriate. *Id.* at 33. A great number of factors must be considered in determining mutual assent and sufficient consideration in executing a release: the exact circumstances of negotiation (time, place, length of discussion, presence of counsel); the presence or absence of duress; the appropriateness of settlement; and the sufficiency of understanding by both parties, inclusive of fluency in the release's language. In the present case, we have virtually no facts relating to the negotiation process, only general statements contained within the affidavits. We have no facts relating to the Clarks' understanding and fluency in English.

Lastly, we note the following point, as we review the granting of summary judgment *de novo*: the Clarks assert that the first check was for a deposit at Budget Rent-A-Car, but the insurance company argues that the check was strictly for settlement of personal injury claims. Not discussed by either counsel or by the district court is the fact that below the Clarks' endorsement signatures on this

check, there appears to be an endorsement stamp by Budget Rent-A-Car, as if the first check had, in fact, been signed over to Budget for a deposit.

This lack of specific, factual information, and unanswered questions on some points, clearly does not meet the standard of lack of genuine issue as to any material fact. Nav. R. Civ. P. 56(c). We conclude that summary judgment was inappropriate. The district court granted summary judgment on vague, generally worded assertions contained in the affidavits submitted by both parties. We vacate the district court's summary judgment.

## IV

On remand, the Kayenta District Court shall make detailed factual findings and conclusions of law to support its decisions. The court shall decide the subject matter jurisdiction issue first, and upon finding jurisdiction, try the lawsuit on the merits.