OPINION

John Doe BF (Appellant) appeals the Shiprock District Court’s January 19, 2010 dismissal of his Second Amended Complaint for Personal Injury for damages resulting from injuries arising from sexual abuse that occurred in 1984-85 when Appellant was 14-15 years old. Defendants are non-members of the Navajo Nation. For the following reasons, we reverse the district court’s order of dismissal and remand the case.
*76 I. PROCEDURAL HISTORY
Appellant filed a Complaint for Personal Injuries against defendant Charles Cieha-nowicz (“Ciehanowicz”) on November 6, 2007, shortly thereafter on November 13, 2007 filing a First Amended Complaint, alleging damages resulting from negligence and other misconduct arising from 2 incidents of sexual abuse in 1984-85 when Appellant was a teenager and Ciehanowicz was his parish priest. In addition to Ci-chanowicz, Appellant named as defendants the Diocese of Gallup (“Diocese”), the Franciscan Friars of St. John the Baptist a/k/a the Franciscan Missionary Union of the Province of St. John the Baptist (“Baptist Order”) and Franciscan Friars Province of Our Lady of Guadalupe a/k/a the Province of Our Lady of Guadalupe of the Order of Friars Minor, Inc. (“Guadalupe Order”). Appellant alleged that during the dates of the abuse, the above entities directly supervised, employed and controlled Ciehanowicz, and that the abuse occurred on premises within the Diocese that was successively owned and operated by the Baptist Order and Guadalupe Order. All the defendants named in the complaint are collectively Appellees in this appeal.
Appellant alleged that as a 14-15 year old child, he had been sexually molested by Ciehanowicz “on the Navajo reservation” after being given alcohol by Ciehanowicz, who was then his priest. Following the incidents, Appellant alleged that Cieha-nowicz threatened him with exposure if he told anyone about the abuse. Appellant asserts that the Diocese, Baptist Order and Guadalupe Order aided and encouraged Ciehanowicz in the abuse by transferring him when he was caught sexually abusing children, continuing to assign him to parishes with unsupervised access to children, failing to report his wrongful conduct to authorities and the public, and in having no system in place to supervise priests, such as Ciehanowicz, to ensure that no minors were abused in their care.
Appellant did not file his complaint until more than twenty years had passed after the alleged abuse occurred. Explaining the delay, Appellant claimed that until May 2007, he did not discover that he had been injured by the abuse, the injuries did not manifest themselves in a psychological and objective manner and were not ascertainable to him, and due to the nature of the injuries, it was not possible for him to connect the symptoms and injuries to the acts of abuse before then. Appellant further alleged that he had developed “various psychological coping mechanisms” which prevented him from filing his complaint prior to May 2007. Finally, he asserted that he suffers great pain of mind and body that has affected his enjoyment of life and earning capacity, and incurs expenses for medical and psychological treatment, therapy and counseling.
Appellant served interrogatories on the Appellees, none of whom responded. Answers were filed by all Appellees except Ciehanowicz. On March 20, 2008, Cieha-nowicz filed a Motion to Dismiss pursuant to the Navajo Rules of Civil Procedure, arguing under Rule 12(b)(1) that the Shi-prock District Court lacked jurisdiction to hear the case involving him as a nonmember defendant because Appellant had failed to plead sufficient facts to establish jurisdiction under both Navajo Nation law and the test for civil jurisdiction provided under Montana v. United States, 450 U.S. 544, 564-65, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1980) and its progeny. Alternatively, Ci-chanowicz argued under Rule 12(b)(6) that the claim was barred by the statute of limitations under 7 N.N.C. § 602(A)(2) which requires a personal injury action to be filed within two years from the date Appellant discovered or should have dis *77 covered the nature, cause, and identity of the person causing the injury. Appellant was permitted to amend his complaint and he filed his Second Amended Complaint on January 21, 2009 to include a statement of Appellant’s Navajo Nation enrollment status. Cichanowicz renewed his motion to dismiss on July 13, 2009. On August 24, 2009, both the Baptist Order and the Guadalupe Order joined in the Motion and further moved for a protective order and stay of discovery.
On September 1, 2009, the district court scheduled a Status Hearing for September 22, 2009 and sent a notice advising counsel: “As counsels of record, you and each of you are required to notify your clients and be present at the time set with such evidence and witnesses as may be necessary for the hearing of said cause of action.” Appellant filed an opposition to Cichanow-icz’s motion to dismiss on September 10, 2009 and to the motions of the remaining defendants on September 14, 2009. Replies were filed by Guadalupe Order and Baptist Order jointly on September 21, 2009 and by Cichanowicz on September 22, 2009, the day of the status conference. That same day, Appellant filed an affidavit and various journal articles on childhood sexual abuse.
At the status conference, the parties were asked if they were ready to argue the submitted motions and proceeded to do so. Following the hearing, Appellant filed a motion to amend his Second Amended Complaint. Without ruling on this Motion, the district court issued an Order to Dismiss on January 19, 2010. The district court found jurisdiction over the defendants on the basis of the Treaty of 1868, but ordered dismissal upon determining that Appellant had failed to file his action within the required statute of limitations period. The district court stated that it had specifically asked Appellant “to bring in witnesses or psychological professionals to support his assertions concerning the time and significance of his insight of 2007” but Appellant “did not present any testimony or evidence other than what he himself stated” and “did not even appear himself to give the Court an explanation.” Order to Dismiss, ¶ 13. The district court then stated that “[a] mental assertion is not sufficient to establish by a preponderance of evidence that the discovery of the nature or cause of an injury, particularly when ... the injury asserted is limited to emotional and mental consequences.” Id.
Appellant filed a Notice of Appeal on February 11, 2010. Briefs were timely filed by all parties. Oral argument, originally scheduled for October 25, 2010, was held at the Shiprock Chapter House on June 27, 2011.
II. ISSUES
The following issues are before this Court:
(a) Whether the district court’s determination of jurisdiction is based on sufficient findings;
(b) Whether the district court erred in ordering dismissal pursuant to a Nav. R. Civ. P. Rule 12(b) motion on the basis that, by not presenting witnesses, experts or evidence other than his own sworn affidavit at a status conference, the plaintiff failed to present sufficient evidence to toll the statute of limitations for personal injury actions pursuant to 7 N.N.C. § 602(A)(4).
III. STANDARD OF REVIEW
The Court reviews the trial court’s dismissal under Nav. R. Civ. P. Rule 12(b) de novo with no deference given to the trial court’s conclusion. Begay v. Navajo Engineering & Construction Authority *78 (NECA) et al., 10 Am. Tribal Law 45 (Nav.Sup.Ct.2011) citing In the Matter of A.M.K., 9 Am. Tribal Law 191, 197 (Nav.Sup.Ct.2010); Bennett v. Shirley, 7 Am. Tribal Law 595, 597-98 (Nav.Sup.Ct.2007).
We assume Appellants’ factual allegations to be true for purposes of our review. Bennett, supra citing Secatero v. Navajo Bd. of Election Supervisors, 6 Nav. R. 385, 389 (Nav.Sup.Ct.1991). Further, the Court reviews legal questions de novo. Green Tree Servicing, LLC v. Duncan, 7 Am. Tribal Law 633, 637 (Nav.Sup.Ct.2008) citing Navajo Transport Services v. Schroeder, 7 Am. Tribal Law 516, 519 (Nav.Sup.Ct.2007).
IV. DISCUSSION
A. Jurisdiction
In this case, the district court determined that it had jurisdiction over the non-member defendants on the basis of “the express authority of the Navajo Nation’s jurisdiction over non-Indians regarding civil matters” provided by the Treaty of 1868. Other than this conelusory statement, the district court made no factual findings.
This Court previously recognized in Clark v. Allen, 7 Nav. R. 422, 423, 2 Am. Tribal Law 474 (Nav.Sup.Ct.1999) that the proper initial inquiry is whether jurisdiction exists over the parties. Similar to this case, Clark involved a civil proceeding filed by an enrolled member of the Navajo Nation against more than one non-member defendants, in that case it was a bad faith insurance claim filed against a non-member individual and an insurance carrier. We stated: “The Court shall decide the subject matter jurisdiction issue first, and upon finding jurisdiction, try the lawsuit on the merits.” Id. at 425, 2 Am. Tribal Law 474. It is self-evident that lacking jurisdiction as a court for any reason, the court may not proceed. Similar to this case, the trial court in Clark failed to make factual findings in reaching its conclusion that jurisdiction exists. Clark was remanded in order for the trial court to make detailed factual findings and legal conclusions, including whether the bad faith insurance claim arose on or off the Navajo Nation, and whether upon application of relevant Navajo Nation and federal law, an informed decision could be drawn as to whether the Navajo Nation courts had subject matter jurisdiction over the case at hand.
Navajo Nation law is clear that the civil authority of our courts to regulate Non-Indian activity within the external territorial boundaries of the Navajo Nation is absolute and stems from inherent authority as recognized in the Treaty of 1868. Dale Nicholson Trust v. Chavez, 8 Nav. R. 417, 5 Am. Tribal Law 365 (Nav.Sup.Ct.2004); Ford Motor Co. v. Kayenta Dist. Ct., 7 Am. Tribal Law 652 (Nav.Sup.Ct.2008); EXC, Inc., et al. v. Kayenta Dist. Ct. and concerning Jensen, 9 Am. Tribal Law 176 (Nav.Sup.Ct.2010). However, even under Navajo Nation law alone and considering no other laws, a finding that the action arose within our territorial boundaries must be made. In this case, the complaint failed to state the location of the abuse other than “Navajo reservation,” and the defendants have joined in disputing a territorial basis for jurisdiction. Under the circumstances, the district court should have made a detailed finding regarding the location of the abuse and erred when it failed to do so.
Federal common law bases tribal civil jurisdiction over non-members on different grounds, namely, a test in which exceptions announced by the United States Supreme Court in Montana v. United States, 450 U.S. 544, 101 S.Ct. 1245, 67 *79 L.Ed.2d 493 (1981), and its progeny must be met.[1] Additionally, the location of the events giving rise to the action is also relevant to the Montana test, which not only asks where the event took place, but who controls and polices that location. See Strate v. A-1 Contractors, 520 U.S. 438, 454, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997). In this ease, the district court erred in failing to make sufficient factual findings and legal conclusions to meet the federal common law test for jurisdiction.
We must emphasize that establishment of jurisdiction under one set of laws should not end the inquiry where jurisdiction is disputed in a civil matter that concerns a non-member. In the past, we have proceeded to the merits of the case after a cursory review of the district court’s finding that jurisdiction existed. See Thinn v. Navajo Generating Station, 7 Am. Tribal Law 558 (Nav.Sup.Ct.2007). With the passage of time, it has become clear that tribal jurisdiction over nonmembers is under increasing attack in federal common law. In this case, defendants have asserted that Montana applies even when the location is indisputably trust land. As a result of the developments in federal law, an analysis of jurisdictional basis under all relevant laws is proper and shall be required of our district courts regardless of the land status where the action arose.
This Court has long recognized the burden this type of jurisdiction inquiry imposes on the district courts. In Nelson v. Pfizer, 8 Nav. R. 369, 4 Am. Tribal Law 680 (Nav.Sup.Ct.2003), this Court refused to impose a Montana inquiry burden on district courts stating that “[jjudicial resources would be stretched if every case brought against a non-Indian required a detailed analysis of the various consensual relationships or direct effects on the Navajo Nation merely to establish jurisdiction.” Id. at 376, 4 Am. Tribal Law 680. We further stated that “our responsibility to protect the sovereignty of the Navajo Nation counsels that we not surrender authority unnecessarily.” Id. In the present climate, this governmental responsibility requires the district courts, however scarce our resources, to make a complete jurisdictional record that will withstand external jurisdictional challenges.
We have stated: “If we have the responsibility to uphold Navajo Nation jurisdiction to the fullest extent permitted by the Treaty of 1868 and the inherent powers of the Navajo Nation, it is up to the *80 Nation’s attorneys to fully advise the Court of all jurisdictional facts.” See Office of Navajo Labor Relations v. Central Consolidated School District, 8 Nav. R. 234, 241, 4 Am. Tribal Law 599 (Nav.Sup.Ct.2002). Private litigants retaining an advocate may have neither the resources nor sufficient understanding of the interests of the Navajo Nation in asserting its civil authority and protecting its jurisdiction over non-members. Therefore, the Nation’s participation on the civil jurisdictional issue involving non-members is both urgent and vital. However, government lawyers normally do not participate until after tribal court proceedings have been exhausted and the jurisdictional issue has reached the federal courts. We exhort the Navajo Nation Council to pass legislation that would require a non-member litigant to provide notice to the Navajo Nation upon initiation of that litigant’s challenge to Navajo Nation subject matter and personal jurisdiction; and further require the Navajo Nation to file a brief as amicus on the jurisdictional issue. Such provisions are necessary, especially when jurisdictional challenges involve the interpretation and validity of a Navajo Nation statute, or otherwise may result in a Navajo Nation plaintiff having no recourse to a remedy in any other jurisdiction. Due to the need to establish bases for jurisdiction under both Navajo Nation and federal common law, the Court modifies Nelson v. Pfizer, supra, which made a Montana inquiry discretionary when a civil case involving non-members occurred on trust land. We hold that where jurisdiction is disputed, detailed factual findings and legal conclusions under all relevant laws are required, without exception, in civil proceedings concerning non-member defendants.
This case will be remanded for a full jurisdictional inquiry.
B. Status Conference
In this case, Ciehanowiez failed to file an Answer within 30 days as required by Nav. R. Civ. P. Rule 8(c). After four months, he pursued dismissal pursuant to Nav. R. Civ. P. Rule 12(b)(1) and (6), joined more than a year later by all Appellees, asserting both that the court lacked jurisdiction and that Appellant filed his complaint too late for the matter to be heard and relief granted.[2] A “status conference” was convened almost two years after the initial complaint was filed and seven months after an amended complaint was filed for the second time. The Notice of Hearing for this status conference directed the parties to bring “evidence and witnesses as may be necessary for the hearing of said cause of action.” Around the time of this status conference, Appellant submitted to the court, but not the Appellees, extrinsic evidence in the form of an affidavit and articles on childhood sexual abuse. The parties argued and defended the Rule 12(b) motions at this status conference, following which the district court issued a Rule 12(b)(6) dismissal partly on the basis that Appellant had failed to present witnesses and other evidence at the above proceeding.
Pursuant to Nav. R. Civ. P. Rule 16(c)(9), a status or pretrial conference for “participants” to act on “dispositions of pending motions” is part of the pretrial case management stage of a civil proceeding, whose purposes and limitations are set forth at Rule 16. As Navajo Rule 16 reflects almost identical provisions in the Federal Rules of Civil Procedure, Rule 16, we will look, for guidance, at Civil Rules Advisory Committee commentary as to *81 how the federal pretrial rules are to be interpreted and applied.
On the Navajo Nation, pretrial conferences are intended specifically for “(1) expediting the disposition of the action; (2) establishing early and continuing control so that the case will not be protracted because of lack of management; (3) discouraging wasteful pretrial activities; (4) improving the quality of the trial through more thorough preparation; and (5) facilitating the settlement of the case.” Nav. R. Civ. P. Rule 16(a). Advisory Committee notes explaining identical provisions in the Federal Rules state that the pretrial phase is intended “to improve the quality of justice rendered in the federal courts by sharpening the preparation and presentation of cases, tending to eliminate trial surprise, and improving, as well as facilitating, the settlement process.” Advisory Committee Notes on 1983 amendments to the Federal Rules of Civil Procedure, Rule 16, citing 6 Wright & Miller, Federal Practice and Procedure: Civil § 1522 (1971). It is clear that in both the federal and Navajo Nation rules of civil procedure, the pretrial phase is not intended to be used to try the merits of any portion of the case.
Nav. R. Civ. P. Rule 16(c)(9) specifically enables “participants” to act on “disposition of pending motions.” This provision is distinguished from amended Fed. R.Civ.P. Rule 16(c)(2)(E), which enables the “court” rather than the participants to act on such motions. Notwithstanding this difference, Advisory Committee commentary on the Federal Rules provision explains that “disposition of pending motions” in the pretrial phase in the Federal Rules does not enable the court to act on motions that require further development through argument and other evidence, but only “enables the court to rule on pending motions for summary adjudication that are ripe for decision at the time of the conference.” Advisory Committee Notes, supra. The federal commentary further notes that “the potential use of Rule 56 (summary judgment) is a matter that [often] arises from discussions during a conference. The court may then call for motions to be filed or ... enter a show cause order that initiates the process.” Id.
It is clear from the plain wording of both Federal and Navajo Rule 16 that the use of pretrial conferences as a motion hearing is clearly not a use for which the conference is intended, especially where the outcome might be dismissal of the entire action. Additionally, the focus of the Navajo rule on actions of “participants” rather than the court emphasizes horizontal decision-making by the parties in concert with the court. Suitable actions pursuant to Rule 16(c)(9) would include voluntary dispositions of motions for continuance, show cause for non-appearance or non-payment, discovery, stays of discovery, and other case management related matters through “talking things out” between the parties. Settlement in the pretrial phase may include “urging the litigants to employ adjudicatory techniques outside the courthouse” and other alternative methods. See id. As time-consuming as horizontal discussions may appear, it is increasingly employed in the federal courts that are apparently developing toward greater empowerment of the parties in the recognition that a vast majority of lawsuits are settled without trial.[3] Navajo Nation judicial rules and policies provide that it is the duty of Navajo Nation judges to use Dine methods of informal discussion “whenever permissible.” Manning v. *82 Abeita, 10 Am. Tribal Law 49, 53-54 (Nav.Sup.Ct.2011). Additionally, the Code of Judicial Conduct imposes an obligation on our judges to “apply Navajo concepts and procedures of justice, including the principles of maintaining harmony, establishing order, respecting freedom, and talking things out in free discussion.” Id., 10 Am. Tribal Law at 53 citing Canon One of the Navajo Nation Code of Judicial Conduct.
It is apparent that the pretrial conference phase is essential in civil proceedings, and its functions are limited to settlement and case management through discussions and actions of the parties in concert with the court. In this case, the parties appeared at a “status conference” and were told to argue and defend Rule 12(b) dismissal motions on jurisdictional and sufficiency grounds. We have held that a court, especially our bicultural courts, must maintain the distinction between pretrial and trial hearings. Manning, 10 Am. Tribal Law at 54. Notwithstanding the acquiescence of the parties, we find the district court erred in converting a status conference into a motion hearing, and in requiring Appellant to appear at such a conference with witnesses and extrinsic evidence.
Since additional evidence had been submitted, it should have been clear that a Rule 12(b)(6) sufficiency motion no longer applied. Rule 12(c) provides: “If, in a motion for judgment on the pleadings, matters outside the pleadings are presented to the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made relevant to such a motion by Rule 56.” In this case, the district court should have discussed with the parties the scheduling of a summary judgment motion hearing pursuant to Rule 56(c). In failing to do so, the district court erred.
We note that the district court convened the “status conference” more than two years after the complaint was filed without having convened any previous case management conferences. Rule 56(c) requires completion of sufficient discovery, including answers to interrogatories, to show that there is no issue as to any material fact. We have stated that “[t]he development of our court system plainly imposes a duty on our Navajo Nation judges to use Diñé methods of informal discussion whenever permissible, primarily to aid horizontal decision-making by the parties themselves.” Manning, supra, 10 Am. Tribal Law at 53. The record shows that the district court never met with the parties for pretrial purposes and Appellant was not allowed any discovery in this matter. Furthermore, Appellant did serve interrogatories on the parties but no ruling was made on the request. Upon remand, the district court shall convene a pretrial conference and ensure that the parties are given reasonable opportunity to present material impacting on the timing of the filing of the complaint and other evidence relevant to the dismissal motions.
Finally, in its Order to Dismiss, the district court found “that Plaintiff did not establish by a preponderance of the evidence that he could not or should not have discovered the nature and cause of his injury ‘by the exercise of reasonable diligence, in light of available knowledge and resources,’ earlier than two years pri- or to November 6, 2007, when he filed his first complaint in this matter.” Order to Dismiss, ¶ 16. The above standard shall not be applied to the statute of limitations issue upon remand. We have previously stated that, in adjudicating a Rule 56 motion, “[i]t is not the trial judge’s function to weigh the evidence and to determine the *83 truth of the material facts before the court, but to decide whether there is a genuine issue for trial,” Jensen v. Giant Industries, 8 Nav. R. 203, 209, 4 Am. Tribal Law 579 (Nav.Sup.Ct.2002) citing Anderson v. Liberty Lobby Inc. 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Upon remand, the district court shall refrain from any weighing of the evidence when considering the Rule 56 motion.
C. 7 N.N.C. § 602(A)(4)
7 N.N.C. § 602(A)(4) provides:
No cause of action accrues for personal injury or wrongful death until the party having the right to sue has discovered the nature of the injury, the cause of the injury, and the identity of the party whose action or inaction caused the injury, or until, in the exercise of reasonable diligence, in light of available knowledge and resources, the party should have discovered these facts, whichever is earlier. This Subsection applies to and revives all injured parties’ claims, regardless of whether the claim may have been barred in the absence of this Subsection.
Appellant submitted a sworn affidavit and articles on childhood sex abuse in support of his assertion that he was unable to discover that the abuse was the cause of his injury, nor the nature of his injury, for over twenty years. The district court gave little weight to this evidence and concluded that Appellant’s mere assertion of delayed insight or delayed discovery was not enough to permit the late filing of his complaint under the conditions set forth in Section 602(A)(4). Additionally, the district court stated that “repressed memory” is the only instance of tolling it knew of that was recognized by other courts, and that it knew of no jurisdiction that has accepted Appellant’s theory. Order to Dismiss, ¶ 5. However, Appellant lists in his brief delayed insight or delayed discovery cases stemming from childhood sex abuse by priests have, in fact, been found credible in other jurisdictions.[4]
The district court stated that Appellant’s “mental assertion” is not sufficient without witnesses or psychiatric professionals when there is no physical harm. Id., f 13. The court stated that “in this case we are dealing with only thoughts and the harm caused by thoughts.” Id., f 11. The district court wanted more evidence than Appellant’s own belief “that one event and not another set a pattern of thinking in motion.” The court than stated that as the Navajo Supreme Court has not permitted relief on the basis of an individual’s own word in cases concerning oral wills and intervivos gifts, therefore a similar objective standard needs to be shown in this case.
Our courts have not previously been asked to interpret the meaning of 7 N.N.C. § 6702(A)(4)’s requirement for “the exercise of reasonable diligence, in light of available knowledge and resources” in relation to a childhood sex abuse case. The legislative history of Section 602(A)(4) shows that it was enacted in order to give uranium radiation victims extra time for their injuries to manifest before filing a *84 personal injury claim. Resolution No. CAP-40-01 (April 20, 2001). Widespread child sex abuse by priests was not yet well-known. No Navajo Nation law specifically addresses child sex abuse victimization as a civil proceeding.
That being said, there is no doubt that our children are in jeopardy from abuse. Appellant’s submitted materials include journal articles on the severity of child sex abuse in Indian Country. Appellant’s Brief, Exhibits 4-5. The articles suggest that Native American boys, as a “relatively powerless minority” may be expected to have acute effects of withdrawal and loss of contact with community when exposed to such abuse, where healing is traditionally achieved through social integration. Marc H. Irwin and Samuel Roll, The Psychological Impact of Sexual Abuse of Native American Boarding School Children, J. Amer. Acad. Psychoanal. 23:461-473 (1995), Appellant’s Brief, Exhibit 4. Pursuant to Diñé bi beenahaz’áanii at 1 N.N.C. § 204(E), it is the right of children to be free of abuse. The vital status of tribal children is further recognized under federal law at 25 U.S.C. § 1901(3) (ICWA). This Court notes further that an Amnesty International Report described “cruel and inhuman treatment was the norm and many children experienced physical and sexual violence” when removed from their families and compelled to attend boarding schools. Maze of Injustice: The failure to protect indigenous women from violence in the USA, Amnesty International USA, 2007, at 16. While the Navajo Nation is very tolerant of all religious traditions, it would be a cruel irony if the same authority figures who seek to replace our ancient holistic traditions[5] are also harming our children in such unspeakable ways.[6]
Tracing psychological and mental injuries over many years primarily to this abuse and not to other causes will not be a simple task. However, we hold that this is a factual issue suitable for a jury to consider at trial, not weighed by a judge in a preliminary motion. Our courts have a duty, in parens patriae, to ensure allegations of harm to our children are fully heard and not dismissed on mere technicalities.
Appellant asks that the Court use the “Objective person in Plaintiffs position” standard, taking into account a person’s upbringing, culture and circumstances after having been subjected to the abuse. This Court agrees that such a standard is applicable on the Navajo Nation. Under this standard in this case, “reasonable diligence” in 7 N.N.C. § 602(A)(4) must be applied to a Navajo person, not a faceless individual whose “reasonable diligence” is measured by an objective standard applied by the dominant culture. We interpret justice through Dine eyes. We do not blindly accept what the phrases have been taken to mean by other societies. To determine what is reasonable for member of the Navajo Nation, it is entirely appropriate to consider factors such as historical trauma and the deference expected of a people by authority figures of a colonizing culture. *85 Citing Martinez-Sandoval v. Kirsch, 118 N.M. 616, 618-620, 884 P.2d 507 (N.M.Ct.App.1994), Appellant further asks that the standard of the “reasonable person who has been subjected to the conduct” whose judgment is “altered in some way” be adopted in assessing whether a reasonable person could have discovered the cause or nature of an injury' sooner. The Court finds this standard applicable, given the language of 7 N.N.C. § 602(A)(4) pertaining to “available knowledge and resources.”
V. CONCLUSION
The District Court’s Order to Dismiss is VACATED. This matter is hereby REMANDED for further proceedings consistent with this opinion.

. The federal courts are a separate jurisdiction with very limited civil authority in Indian Country. Notwithstanding this limitation, federal court rulings profoundly affect tribal civil authority involving non-members in ways that have become "erratic and standard-less.” Thomas P. Schlosser, Tribal Jurisdiction Over Non-Members, 37 Tulsa L.Rev. 573 (2001-2002). Some federal courts have even crossed jurisdictional lines and have begun treating our tribal courts and administrative agencies like subordinate courts rather than a separate sovereign adjudicative system. See, e.g., Amended Judgment in Red Mesa Unified School District et al. v. Sara Yellowhair, et al., issued by the United States District Court for the District of Arizona, No. CY-09-807I-PCT-PGR (D.Ariz. January 6, 2011) (voiding tribal court orders and enjoining tribal court action in a consolidated employment-related matter in which the protections of the Navajo Nation Preference in Employment Act were found to be inapplicable to all employees of Arizona state-funded schools located on the reservation). We are an Indian sovereign judicial system, and as such there is no statutory mandate for our courts to apply the decisions of federal courts within our jurisdiction. However, we do so in the area of our civil jurisdiction over non-members out of the need to participate in, essentially, a political relationship. The jurisdictional barriers created by the federal courts, unilaterally imposed without consulting Congress or the tribes, must be practically resolved through engagement.

. Statute of limitations is, specifically, an affirmative defense that must be pled at the time an answer is filed pursuant to Nav. R. Civ. P. Rule 8(c).

. Herbert M. Kritzer, Adjudication to Settlement: Shading in the Gray, 70 Judicature 161, 163-64(1986).

. Cases cited by Appellant include Riley v. Presnell, 409 Mass. 239, 565 N.E.2d 780, 785-786 (1991) (An injury to the mind could cause a person to be unable to link the misconduct to the damage); Callahan v. State, 464 N.W.2d 268 (Iowa 1990) (abuse victim could not have realized that she had a cause of action against her teacher because of the combination of internal psychological factors and the relationship of the high authority teacher to her self-concept of a low status person who must accede to authority): and Osland v. Osland, 442 N.W.2d 907 (N.D.1989) (due to severe emotional trauma, victim was not able to fully understand or discover her cause of action during the applicable statutory time period).

. Authority figures of religious institutions have historically imposed their ideas and judgments on North American "heathens," fully intending to conquer, rework, and redesign our societies. See Steven T. Newcomb, Pagans in the Promised Land: Decoding the Doctrine of Christian Discovery, Fulcrum Publishing (January 29, 2008).

. The Court takes note that since Oliphant v. Suquamish. Indian Tribe, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978), which ruled that tribes have no inherent authority to punish non-Indian criminal offenders, the Navajo Nation people are subject to criminal offenses by non-Indians without a remedy.