OPINION

Appellant Neptune Leasing, Inc. appeals a March 26, 2010 Order of Dismissal of a repossession action issued by the Shiprock District Court based on lack of personal jurisdiction over Appellee Mountain States Petroleum Corporation. In its order, the Shiprock court also “yielded” subject matter jurisdiction to a Texas court in which a proceeding unrelated to repossession was pending. The Shiprock court stated that in its view' the Navajo Nation has exclusive subject matter jurisdiction over the repossession claim in question, however “a foreign order for repossession can be domesticated in the Navajo courts” after which Appellant may then “file that Texas order to be recognized by the Navajo Nation.” Order of Dismissal, p. 4-5. In this opinion, we address both of the district court’s above decisions and reverse for the reasons set forth below.
BACKGROUND
On November 8, 2008, Appellant Neptune Leasing, Inc. (Neptune) filed a Complaint for Repossession, Conversion, and Unjust Enrichment/Breach of Diñé bi beenahaz’áanii against Appellees Mountain States Petroleum Corp, (Mountain States) and Nacogdoches Oil and Gas, Inc. (Nacogdoches). Neptune claims that it sold a helium plant (plant) to Mountain States on November 17, 2006 pursuant to a multi-year installment payment plan, and that Mountain States was in breach of that payment plan. Neptune bases its right to repossess solely on a November 17, 2006 *164 security agreement signed between the parties giving Neptune a security interest in “the physical and intangible assets of the plant.” Appellant’s Opening Brief p. 5. Nacogdoches is drawn into this suit because within a year of Neptune’s sale, Mountain re-sold the plant and its assets to Nacogdoches on August 31, 2007. Neptune asserts that Mountain States’ sale to Nacogdoches was without its consent and, therefore, constitutes a breach of contract. Neptune further claims monetary damages for wrongful possession under various Navajo Nation common law claims, including Diñé bi beenahaz’áanii.
The helium plant is an improvement on a business site leasehold located on Navajo trust land within the territorial boundaries of the Navajo Nation (Nation). The last known written lease for the site was a 1974 business lease between the Navajo Nation and an entity unconnected to this case. Neptune’s sale to Mountain States was done without the knowledge or involvement of the Nation. At oral argument, Neptune stated it is unable to produce a lease or any written document showing the basis for its possession of the site and/or ownership of its improvements. Similarly, at oral argument Nacogdoches confirmed that it has never entered a written lease nor operating agreement specific to the plant with the Navajo Nation. However, Nacogdoches asserts that its purchase from Mountain States was done with “the knowledge and consent of the Navajo Nation” and that it occupies and operates the plant with the Nation’s verbal approval and pays the Nation applicable royalties and rents pursuant to certain regional oil and gas operating agreements with the Nation under which Nacogdoches has the right to generally develop and produce helium, hydrocarbon and other gas resources within specified areas of the Nation. Response of Nacogdoches, Exhibit A, Affidavit of Michael L. Finley (August 7, 2009). Nacogdoches also claims to have entered operating agreements specific to the plant with Neptune and Mountain States. Id. Those agreements have never been entered into the record.
Both Appellees challenged the Nation’s jurisdiction over them and the subject matter. Nacogdoches later withdrew its jurisdictional challenge but still argued for dismissal due to the Nation not having been joined as an indispensable party. Additionally, Mountain States argued that the matter should be tried in Texas due to choice of law and forum clauses in the Neptune-Mountain States purchase agreement. Neptune and Nacogdoches are Texas corporations with their principal place of business in Amarillo and Rockwell, Texas, respectively. Mountain States is a New Mexico corporation with its principal place of business in Farmington, New Mexico.
After first finding jurisdiction at a hearing in October, the district court ordered further briefing and then reversed its decision as to jurisdiction after the submission of a “position statement” by the Nation in which the Nation asserted that Mountain States was no longer doing business with the Nation. However, Mountain States itself never provided the current status of its business dealings to the court. In its Order to Dismiss issued on March 26, 2010, the court found that it had personal jurisdiction over Neptune due to its consent and over Nacogdoches due to its business dealings. However, stating that “Mountain State is a New Mexico Corporation and is not filed as a foreign Corporation with the Navajo Nation, and it is not evident it has contacts, business or otherwise with the Navajo Nation,” and “[s]ince it has not been proven to this Court that Mountain State has any contacts with the Navajo Nation, substantial enough to establish personal jurisdiction” nor has *165 Mountain States “acquiesced to the jurisdiction of the Navajo Nation court,” the district court concluded that personal jurisdiction over Mountain States was lacking. Order of Dismissal, p. 5-6.
The district court next found that pursuant to 7 N.N.C. § 254, the Nation’s courts have exclusive jurisdiction over the subject property while noting that its jurisdiction to address breach of contract claims was in question because of a pending matter in Texas and the contracts in question “specifically stated the venue for suit would be brought in the state, of Texas and the Texas Laws would apply.” Id., p. 4. Without confirming what matter was actually pending in Texas and with neither analysis nor finding as to whether the Nation should properly adjudicate the contract claim, the district court stated that it would “yield” jurisdiction to the Texas court on the contract matter. Further stating that “a foreign order for repossession can be domesticated in the Navajo courts,” the district court stated that if the Texas court found Neptune has rights of repossession to recover a debt pursuant to a breach of contract, then that Texas order may be domesticated and “repossession could proceed.” Id., p. 4-5.
Neptune timely appealed the district court’s Order of Dismissal. All briefs, and supplemental briefs requested by this Court, were timely submitted, including an amicus brief from the Nation. The Nation’s amicus brief updated the Court on the pending Texas proceedings, describing them as bankruptcy proceedings not involving all parties and pursuant to which all other state or federal suits have been automatically stayed. Oral argument was heard on March 21, 2013 at the Menard Law Building, University of Idaho, Moscow, Idaho. The Court now issues its opinion.
ISSUES
1. Whether the district court properly dismissed the action below for lack of personal jurisdiction over Mountain States.
2. Whether the district court properly “yielded” subject matter jurisdiction to an unnamed Texas court conducting unspecified proceedings involving some or all of the parties.
STANDARD OF REVIEW
We review the underlying factual findings for clear error and the legal conclusions de novo. An erroneous application of law is an abuse of discretion. Navajo Housing Authority v. Bluffview Resident Management Corp., 8 Nav. R. 402, 412, 4 Am. Tribal Law 700 (Nav.Sup.Ct.2003); and see Dale Nicholson Trust v. Chavez, 8 Nav. R. 417, 424, 5 Am. Tribal Law 365 (Nav.Sup.Ct.2004) (issues of law reviewed de novo).
DISCUSSION
Neptune asserts that the conclusion of the district court that Mountain States does not have “contacts, business or otherwise with the Navajo Nation” is unsupported by the record. Neptune further asserts that the court’s Order to Dismiss sets forth no legal standards for determining personal jurisdiction sufficient to justify its finding that none exists in relation to Mountain States. We agree and find that the district court abused its discretion by putting forward a bare legal conclusion as to jurisdiction without proriding the required analysis as to what jurisdictional tests it was applying both under Navajo Nation and/or federal law and how, on the basis of those tests, it arrived at its decision.
Conelusory findings of any kind are improper in court decisions. We have repeatedly required our courts to provide *166 reasoned findings in order for the parties to understand their decisions and in order that this Court may effectively review decisions on appeal. See Phillips v. Navajo Housing Authority, 8 Nav. R. 751, 756 n. 3, 6 Am. Tribal Law 708 (Nav.Sup.Ct.2005) citing Watson v. Watson, 8 Nav. R. 638, 642, 6 Am. Tribal Law 644 (Nav.Sup.Ct. 2005) (other cites omitted). Unsupported decisions without sufficient facts, legal analysis nor proper findings can result in the vacating of the district court’s decision and may result in a remand for further proceedings. See id.
While in the past we had permitted our courts to engage in jurisdiction discussions solely under Navajo law, we have for several years observed that the duty to preserve our sovereign courts creates the political necessity that we engage in discussions of the relevant jurisdictional tests under both Navajo Nation and federal law when jurisdiction is challenged in civil actions involving individuals who are not enrolled members of the Navajo Nation. John Doe BF v. Diocese of Gallup et al, 10 Am. Tribal Law 72, 78-80 (Nav.Sup.Ct.2011). We have taken judicial notice that “judicial resources would be stretched if every case brought against a non-Indian required a detañed analysis of the various consensual relationships or direct effects on the Navajo Nation merely to establish jurisdiction.” Id. at 79. However, “[w]ith the passage of time, it has become clear that tribal jurisdiction over non-members is under increasing attack in federal common law” and therefore, “an analysis of jurisdictional basis under all relevant laws ... shall be required of our district courts regardless of the land status where the action arose.” Id.
Due to the lack of analysis by the district court, we must engage in a full jurisdictional discussion here, beginning first with jurisdiction bases under Navajo law7, then proceeding to a discussion under the relevant federal common law tests.
Under Navajo Nation law, the authority to regulate non-members, including non-Indians other than certain federal employees, comes from inherent sovereignty that is specifically recognized in Article II of the Treaty of 1868. See Dale Nicholson Trust v. Chavez, 8 Nav. R. 417, 428, 5 Am. Tribal Law 365 (2004). This inherent authority is codified in the Navajo Nation Long-Arm Statute at 7 N.N.C. § 253(a). EXC, Inc. v. Kayenta Dist. Court, 9 Am. Tribal Law 176, 179-80 (Nav.Sup.Ct.2010). There are several grounds for jurisdiction under Navajo Nation law as enumerated in our long-arm statute, including the non-member’s consent to jurisdiction through conduct, including “commercial dealings.” This includes a person acting directly, or through an agent, “as to a cause of action for relief arising from the person’s [transacting any business in the Navajo Nation” and “[h]aving an interest in, using, or possessing real property in the Navajo Nation including the actual occupancy or lease of trust land, allotted land, fee land, or any other land within Navajo Indian country.” 7 N.N.C. § 253a(C)(l) and (5) respectively. The record, containing a signed security agreement with the seller, Neptune, and unre-futed statements by the re-sale purchaser, Nacogdoches, show that Mountain States was involved in the purchase and sale of the plant. However, the district court appeared to believe that only whether Mountain States continues now to do business is relevant for jurisdiction purposes.[1] We *167 find that this was clear error. As our long-arm statute is unequivocal that jurisdiction is proper over a non-member entity whose business dealings gave rise to this claim whether or not the entity is currently conducting business, without further ado, we reverse the district eourt and find that jurisdiction exists over Mountain States under Navajo Nation law on the basis of its purchase and re-sale of a plant on trust land, which is the subject of this repossession claim. We next turn to federal common law.
Federal common law imposes a two-prong test set forth in Montana v. United States, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981) for personal jurisdiction over a non-member,[2] which some subsequent federal cases extended and interpreted as requiring a Montana analysis regardless of whether the action arose on or off tribal trust land. The U.S. Supreme Court held in Montana, that absent a federal grant of authority, tribes generally lack inherent jurisdiction over non-member activities on non-member fee land, but retain inherent civil jurisdiction over nonmember activities within the reservation where (i) non-members enter into “consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements” or (ii) “... [non-member] conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.” Montano,, supra at 566, 101 S.Ct. 1245. By providing not even a cursory analysis of Mow-tana in this case, the district court abused its discretion and, more importantly, failed to exercise its “responsibility to protect the sovereignty of the Navajo Nation [which] counsels that we not surrender authority unnecessarily.” EXC, Inc. v. Kayenta, Dist. Court, 9 Am. Tribal Law 176, 179-80 (Nav.Sup.Ct.2010).
Firstly, the district court’s decision in its dismissal order would have us read Mon-taríais first prong as requiring an on-going consensual relationship in order for jurisdiction to be found. The rationale seems to be that Indian jurisdiction over nonmember entities who have transacted business within the Nation is no longer possible when the business relationship ends. Such a rationale would result in any claim arising out of past dealings, including purchase and sale of Navajo Nation land, no longer being triable in the courts of the Navajo Nation, and would allow parties to a contract or tortfeasors to avoid the Nation’s adjudicatory authority over their conduct once they leave the territorial jurisdiction of the Nation. While the reasoning is an insult to the Nation’s sovereignty, nevertheless, the threat is real that such a position might well be accepted in some federal courts upon a literal application of the present federal common law tests.
Recently, in a matter concerning the Colorado River Indian Tribes’ civil authority over a non-member corporation acting on tribal land, the Ninth Circuit found that, in the absence of a competing state *168 interest, the tribe had regulatory jurisdiction through its inherent authority to exclude, independent from the power recognized in Montana. The Ninth Circuit chose to apply “traditional personal jurisdiction principles” rather than apply any Montana tests in order to find tribal jurisdiction over the non-member corporation. See Water Wheel Camp Recreational Area, Inc. v. LaRance, 642 F.3d 802, 805, 810-813 (9th Cir.2011)(concluding that the tribe’s right to exclude non-Indians from tribal land includes the power to regulate them unless Congress has said otherwise, or unless the Supreme Court has recognized that such power conflicts with federal interests promoting tribal self government) citing Iowa Mut Ins. Co., 480 U.S. at 18, 107 S.Ct. 971, 94 L.Ed.2d 10 (“Tribal authority over activities of non-Indians on reservation lands is an important part of tribal sovereignty. Civil jurisdiction over such activities presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute.” (internal citations omitted)). As in this case, Water Wheel concerns a jurisdictional challenge by a non-member acting on tribal land without a lease. We find the Ninth Circuit’s approach to tribal authority on our own land to be the more informed and respectful view of the Nation’s authority.
There is no congressional intent to limit the Nation’s regulatory jurisdiction over Navajo trust land beyond criteria set forth at 25 U.S.C. § 415. Only one time, in Nevada v. Hicks, 533 U.S. 353, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001) has the U.S. Supreme Court established an exception to the general rule that Montana does not apply to jurisdictional questions arising from the tribe’s authority to exclude, where a state had a competing interest to execute a warrant and the tribe’s power of exclusion was not enough on its own to assert regulatory jurisdiction over state officers in that situation. No competing state interest exists, nor has been asserted in this case. Relying on Water Wheel, it is our view that Montana has no application in this case. Nevertheless, we will discuss Montana in anticipation of, and to forestall, any future finding of error by a federal district court.
Firstly, it is our view that Mountain States’ commercial dealings concerning a business site leasehold on trust land is a consensual relationship with the Nation through commercial dealings, satisfying Montana’s first prong for both personal and subject matter jurisdiction.
A great deal has been made of clauses in the security agreement between Neptune and Mountain States in which they have agreed between themselves to address disputes arising from the agreement in a Texas Court under Texas law. Mountain States argues that this private contractual clause takes away jurisdiction from our courts. We disagree, and find that no private agreement can ever avoid Navajo Nation jurisdiction over transactions on Navajo trust land. Under Navajo law, an agreement between individuals or entities to avoid Navajo jurisdiction may certainly never be enforced when the transaction concerns “physical and intangible assets” that may include improvements on a Navajo Nation business site leasehold on trust land. We would emphasize that Navajo law provides for the Nation’s re-versionary interest unless a duly approved written lease provides otherwise. In this case, no one in the present action has been able to produce any lease involving the parties, under whose terms the Nation’s reversionary interest may be properly examined, and pursuant to which any transfers of improvements may be monitored and regulated.
*169 In order to transfer improvements, a business entity must have the consent of the Nation and must have proper color of title, i.e., must be a leaseholder, in order to do so. Pursuant to 25 C.F.R. § 415, business site leaseholds on the Navajo Nation may be for as long as ninety-nine years with the approval of both the Navajo and federal governments. Under the Navajo Nation Business Leasing Regulations of 2005, a lease must be periodically reviewed every five (5) years in the best interest of the people, and any improvements revert to the Nation unless otherwise provided in a lease. Navajo Nation Business Leasing Regulations, Section 305 and 308. Nacog-doches has asked us to apply on them the terms of a 1974 lease involving a non-party entity. Essentially, they would have us find an equitable lease with fixed terms inferred from a forty-year old document not signed by any party, and without being able to track how any of the parties came to “own” the site, and subsequently to properly transfer the improvements on that site in conformance with Navajo law. While we are aware that Nacogdoches and amicus Nation have entered written leases and agreements for sites other than the plant, and both have stated their desire to maintain their business relationship in the furtherance of the Nation’s economic development, nevertheless leases need to be monitored.
If we apply Montana, the private party transfers of Navajo land in this case, without written leases, surely threaten or have some direct effect on the political integrity, the economic security, or the health or welfare of the tribe under Montana’s second prong. Navajo land belongs to the people, and management of Navajo land carries a solemn responsibility. The local chapter and central Navajo Nation governments make decisions in trust on the use of Navajo lands for the community welfare. See Atcitty v. District Court for the Judicial of Window Rock, 7 Nav. R. 227, 230 (Nav.Sup.Ct. 1996). The concept that an individual can gain an “equitable lease” for business purposes is counter to the established principle that no individual can gain any prescriptive right in land belonging to the Nation or in land dedicated to a community use. Unlike homesite leases, k’é cannot create any right in business site leases which culminates in an “equitable lease,” and no one has the right to occupy Navajo property for business purposes without being a party to a lease. Yazzie v. Jumbo, 5 Nav. R. 75, 77 (Nav.Sup.Ct. 1986). All who do business on the Nation, especially those involved in the lucrative extraction industries, know our laws or cannot claim ignorance of our laws in the transaction of business on the reservation.
It appears that transfers of trust land have been made without tribal approval across several layers of companies involved in this appeal. The practice of sale and swift resale of leases and related improvements without tribal approval, sometimes termed “lease assignment,” or simply “flipping,” is “a practice as old as the hills.”[3] Certain investors and companies acquire lease rights only to transfer their interest to companies with more funding resources for development and who are happy to acquire those interests outside the tribal approval process. While we do not say that “flipping” has occurred here, the companies involved and the Nation are all clearly at a loss to explain their purported lease assignment and respond with uncertainty when asked to provide a lease to the plant, expired or otherwise. As we say in *170 Diñé, t’óó hoi dak hazkqqhgoóh h(i k’iho-doodqqt (one cannot resolve disputes when in a confused state).
The practice of swift re-sale without involving the Nation clearly interferes with the Nation’s ability to manage our land. While being able to point to a lease’s terms would be crucial to a jurisdictional challenger under Montana in seeking to limit the Nation’s reversionary interest in this case, the lack of a lease, and lack of involvement of the Nation across generations of valuable transfers, does not remove private entities from regulation or adjudication under Navajo law. We said as much in EXC, supra, in which we found jurisdiction under the Navajo Nation Tour and Guide Services Act over tour bus companies who surreptitiously operate lucrative tour businesses across the Navajo Nation without obtaining a Navajo Nation permit or signing an agreement under the Act consenting to the jurisdiction of the Navajo Nation Courts. EXC, supra, at 180-81. We would note that the Arizona district court to which EXC was appealed agreed that evasion of our Nation’s laws may not be a basis for lack of consent under Montana, and “no person or entity may deny the Navajo Nation’s regulatory and adjudicatory jurisdiction on the basis of a violation of [the Nation’s] laws.” See EXC v. Jensen, No. CV 10-08197-PCT-JAT, slip op. at 10, 2012 WL 3264526 (D.Ariz. Aug. 9, 2012) citing EXC, supra at 184-85. Federal common law acknowledges that our regulatory power over nonmembers flow from our inherent sovereign powers to exclude. South Dakota v. Bourland, 508 U.S. 679, 689, 113 S.Ct. 2309, 124 L.Ed.2d 606 (1993). We find that jurisdiction is found in this case under both prongs of Montana on a remarkable number of bases as discussed above, and including Mountain States’ expectations that its re-sale dealings in Navajo trust land may result in litigation in which it has to appear in our Nation’s courts, regardless of whether Mountain States has privately agreed on a foreign forum with another non-member.
In summary, we find that the district court erred in finding lack of jurisdiction over Mountain States. We disagree that Montana applies in the present circumstances, notwithstanding the parties’ arguments otherwise. We emphasize, first and foremost, that we find jurisdiction under both Navajo and federal law pursuant to our powers of inherent sovereignty and the treaty right to exclude. However, our policy that Montana must be discussed in all jurisdictional challenges in civil actions concerning non-members required that Montana be fully discussed, and we have done so, supra. On the basis of reasons set forth above, we find that our courts have jurisdiction over Mountain States under Montana’s first exception because of Mountain States’ dealings concerning Navajo land, regardless of any private agreement to sidestep our tribal courts. Additionally, we find that our courts have jurisdiction under Montana’s second prong as these transactions concern Navajo land which are assets essential for the Navajo Nation’s economic development, political integrity, and the welfare of the people, whose transfers must conform to Navajo laws in order to be properly regulated and managed.
Finally, we address the district court’s “yielding” of subject matter jurisdiction over the repossession action to Texas in order to have Texas determine any contractual breach and determine any debt. The district court did so without making any finding as to what type of proceeding was underway in Texas, or even who the parties were in that action. Additionally, the court could not have properly yielded jurisdiction after having *171 already determined that it lacked jurisdiction over Mountain States. For these reasons, the district court erred.
Having now made the necessary findings and concluded that the Navajo Nation has jurisdiction over the subject matter and all parties, our review leads us to conclude that this matter is incapable of being properly “yielded” to another forum. Our long arm statute at 7 N.N.C. § 253a(E) permits a court to stay or dismiss an action due to inconvenient forum “in whole or in part on any condition that may be just,” However, before a court may dismiss under this provision, there must be a finding that there is a pending action on the same subject matter in another, more convenient forum, and that the dismissal will “be just.” We find that the case before us must be tried before a Navajo Nation court for reasons of sovereignty and application of Navajo law. Firstly, the transaction concerns Navajo land, over which our courts have exclusive jurisdiction. Secondly, the legality of transfers of Navajo land from one private party to another in this case without consultation with the Nation and without proper leases since 1974 can only be addressed by a Navajo Nation court under Navajo law. Thirdly, the extent of the Nation’s reversionary interest in improvements on business site leaseholds cannot be addressed in any other forum because that interest is based on Navajo law, and “any attempt by a state court to adjudicate property interests of the Nation on trust land within its territory would most certainly infringe on the right of the Nation to make its own laws and be ruled by them.” Amicus Brief at 3 citing William,s v. Lee, 358 U.S. 217, 223, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959) and Chino v. Chino, 90 N.M. 203, 206, 561 P.2d 476 (N.M.1977) (no state jurisdiction over property dispute within reservation). It may well be that the lack of written leases alone, or the Nation’s reversionary interest alone, may prohibit repossession of the plant’s “physical and intangible assets” in this case.
CONCLUSION
For the foregoing reasons, the district court’s Order of Dismissal is VACATED and the repossession complaint is hereby REINSTATED. This matter is hereby REMANDED for further proceedings consistent with this opinion.

. In any case, the court’s finding that there was no further business activity by Mountain States on the Navajo Nation following its purchase and re-sale of the plant in 2006-2007 is *167 premature, as the court relied only on an observation by amicus Nation while Mountain States itself never addressed the question under oath.

. This case involves only corporate entities. Evidently, a corporate entity cannot be an "enrolled member” of the Navajo Nation, as membership, like citizenship, confers rights, privileges and duties on human beings. However, there appears to be an assumption that corporate entities established and/or owned by non-member individuals or incorporated under non-Navajo laws are to be considered non-Indian for jurisdictional purposes. The Court makes no finding as to the propriety of this assumption as it is not necessary to do so in this case.

. "Negotiating Oil and Gas Leases in Indian Country” by Jay Daniels, Indian Country Today, January 30, 2013.